418

## Sandra M. Carrick v. Franchise Associates, Inc., Howard Johnson Company, and Prime Hospitality Corporation

[671 A.2d 1243]

No. 94-637

Present: **Gibson, Dooley, Morse and Johnson, JJ., and Maloney, Supr. J.,** Specially Assigned

Opinion Filed October 27, 1995

Motion for Reargument Denied December 11, 1995

*Richard S. Bloomer* of *Lorentz, Bloomer & Harnett, P.C.*, Rutland, for Plaintiff-Appellant.

*Douglas D. Le Brun* of *Dinse, Erdmann & Clapp*, Burlington, for Defendants-Appellees.

**Gibson, J.** Plaintiff Sandra Carrick appeals from an order of the Rutland Superior Court granting summary judgment to defendants on plaintiff's claims of franchisor liability under the Dram Shop Act, 7 V.S.A. §§ 501-507. We affirm.

The facts are not in dispute. On the evening of January 16, 1991, Shawn C. Forrest was a customer at the Plug & Feather Lounge in Rutland. Over the course of approximately four hours, employees of the Plug & Feather served Mr. Forrest eight mixed drinks, which he consumed. Mr. Forrest then left the Plug & Feather and, while driving south on Route 7 at a high rate of speed, ran a red light and collided with a vehicle driven by plaintiff's decedent, Michael Carrick. Mr. Carrick died of the injuries he received in the crash.

The Plug & Feather is located within the Howard Johnson Restaurant in Rutland. The building housing the restaurant and lounge bears the orange-tile roof and other trademarks and trade dress of defendant Howard Johnson Company (HJC) and is located next door to a Howard Johnson Motor Lodge. The Motor Lodge operates under a license from defendant Prime Hospitality Corporation (Prime). The property on which the restaurant and lounge are located is leased to Brown & Currier, Inc., which operates the restaurant and lounge under a franchise agreement with defendant Franchise Associates, Inc. (FAI). A separate trademark agreement between FAI and HJC allows FAI to license the use of the Howard Johnson name and trademarks.

Plaintiff brought suit in Rutland Superior Court against HJC, FAI and Prime, alleging that each had violated Vermont's Dram Shop Act by failing to take reasonable steps to prevent Brown & Currier, as operators of the Plug & Feather, from overserving alcohol to Mr. Forrest.[1] Defendants moved for summary judgment on the ground that plaintiff had failed to show that defendants, as franchisors, had sold or furnished alcoholic beverages to Mr. Forrest, as required by 7 V.S.A. § 501(a). The court granted summary judgment in defendants' favor, and the present appeal followed.

A motion for summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." V.R.C.P. 56(c)(3); *Ross v. Times Mirror, Inc.*, 164 Vt. 13, 17-18, 665 A.2d 580, 582-83 (1995). The sole issue on appeal is whether defendants, as franchisors of the "Howard Johnson" name and trademarks, can be held liable under the "furnishing" provision of the Dram Shop Act, which states:

---

[1] Plaintiff also brought suit against Shawn Forrest and Brown & Currier, Inc. These claims were disposed of by settlement and are no longer before the court.

> A spouse, child, guardian, employer or other person who is injured in person, property or means of support by an intoxicated person, or in consequence of the intoxication of any person, shall have a right of action in his or her own name, jointly or severally, against any person or persons who have caused in whole or in part such intoxication by selling or *furnishing* intoxicating liquor . . . .

7 V.S.A. § 501(a) (emphasis added).

■■■ Our previous decisions have defined "furnishing" to include "supplying" in a manner other than by selling. *State v. McDermott*, 108 Vt. 58, 60, 182 A. 191, 192 (1936); see also *Estate of Kelley v. Moguls, Inc.*, 160 Vt. 531, 535, 632 A.2d 360, 363 (1993) (using terms "furnishing alcohol" and "supplying alcohol" interchangeably). Defendants argue that a person "furnishing" alcohol must actually possess and directly provide an alcoholic beverage to a consumer. We agree that the word "furnishing," as used in our Dram Shop Act, connotes possession or control of the alcoholic beverage by the furnisher. See *Bennett v. Letterly*, 141 Cal. Rptr. 682, 684 (Ct. App. 1977) ("[t]he word 'furnish' implies some type of affirmative action on the part of the furnisher"); see also *Lather v. Berg*, 519 N.E.2d 755, 761 (Ind. Ct. App. 1988) (under Indiana's Dram Shop Act, liability for "furnishing" alcoholic beverages is limited to "supplier [who] was '*the* active *means* by and through which the liquor [was] placed in the custody and control of persons whom the statute was enacted to protect'") (quoting *Banks v. State*, 123 N.E. 691, 693 (Ind. 1919)). In the instant case, there is no allegation that defendants ever had possession of the alcoholic beverages that were served to Mr. Forrest by the Plug & Feather. To avoid summary judgment, therefore, the record must show that defendants had control over the service of alcoholic beverages at the Plug & Feather.

Although discovery had been substantially completed at the time the superior court entered summary judgment, the only evidence of defendants' control of the Plug & Feather's operation was the franchise agreement between FAI and Brown & Currier. That agreement gave Brown & Currier a license to use the name "Howard Johnson" for the "maintenance, conduct and operation . . . of a restaurant including serving of alcoholic beverages." FAI, as licensor, had the power to "determine, prescribe and approve standards of restaurant services and of the quality for all food, food products, beverages and other commodities bought, used, sold, served or

dispensed on or from the restaurant, [and] standards of service in connection with their sale or service"; Brown & Currier, as licensee, was required to "conform to said standards, including but not limited to *compliance with the standards as outlined in the Manuals*," and FAI and HJC could "inspect the conduct and operation of the Licensee's business." (Emphasis added.) Failure to maintain the standards imposed under the franchise agreement could have placed Brown & Currier in default of the franchise agreement and resulted in termination of the agreement. The franchise agreement further required Brown & Currier to pay FAI a "royalty fee" equal to 1.5% of the gross sales of the business, including the sales of alcoholic beverages.

■ According to plaintiff, the foregoing provisions of the franchise agreement demonstrate that defendants exercised such control over the operation of the Howard Johnson Restaurant and Lounge that liability for overserving Mr. Forrest can be laid directly at their doors.[2] We disagree. The agreement merely provided that FAI, as franchisor, had the right to prescribe and approve standards of service. As the trial court concluded, plaintiff offered no evidence that defendants had actually prescribed such standards, or if they had, that those standards included training bartenders in the proper exercise of discretion in serving alcoholic beverages. The franchise agreement contains a reference to "standards as outlined in the Manuals," but as plaintiff conceded at oral argument, the Manuals were not presented below and are not part of the record on appeal.

Defendants urge us to hold that franchisors are immune from liability under the Dram Shop Act, on the ground that they do not directly furnish alcohol to consumers. We need not reach this question on the record presented. We decide today only that plaintiff failed to present sufficient evidence of defendants' control to sustain her claims under the Dram Shop Act.

*Affirmed.*

---

[2] Plaintiff has not attempted to distinguish among the defendants by the degree of control they may have exercised. For example, there is no evidence that Prime, as franchisor of the neighboring Howard Johnson Motor Lodge, had any role in the franchising or operating of the Howard Johnson Restaurant or the Plug & Feather lounge. We decide today that there was insufficient evidence to sustain a claim against any of the three defendants.