**Naomi "Sukie" Knight, Administrator of the Estate of David Woodward, Naomi "Sukie" Knight, Individually, and Timothy N. Woodward v. Jacob Rower, Kenneth Rower, Leslie S. Rower, Heather Pierson, Gidget Rollins, Sally Spear, Donald Leete, Duncan Leete and Geraldine Leete**

[742 A.2d 1237]

Nos. 98-400 & 98-485

Present: Amestoy, C.J., Morse, Johnson and Skoglund, JJ., and Allen, C.J. (Ret.)* Specially Assigned.

Opinion Filed October 29, 1999

---

*Allen, C.J. (Ret.), was present for oral argument, but did not participate in the decision.

*David F. Kelley*, Orleans, and *John F. Evers* of *Langrock Sperry and Wool*, Middlebury, for Plaintiffs-Appellants.

*Duncan Frey Kilmartin* of *Rexford & Kilmartin*, Newport, for Defendant-Appellee Spear.

*James C. Gallagher* of *Downs Rachlin & Martin, PLLC*, St. Johnsbury, for Defendants-Appellees Leete.

**Johnson, J.** Plaintiffs appeal from two superior court decisions dismissing their negligence action against defendants for failure to

state a claim upon which relief can be granted. David Woodward and Jacob Rower visited two separate properties, one owned by defendants Duncan and Geraldine Leete and the second owned by defendant Sally Spear. They consumed alcohol on defendants' lands. Woodward was a passenger in Rower's car as they left Spear's property and Rower caused an accident. Woodward died as a result of the crash. Plaintiffs are Woodward's mother, individually and as the administrator of his estate, and his father. In both cases, the court held that landowners do not owe a legal duty to individuals injured by minors attending social gatherings on their land if the landowners are neither present nor furnish the alcohol consumed. We affirm.

In reviewing the granting of a judgment on the pleadings pursuant to V.R.C.P. 12(c), this Court takes as true all well-pleaded factual allegations in the nonmovant's pleadings and all reasonable inferences to be drawn from them, and takes as false all contravening assertions in the movant's pleadings. See *Thayer v. Herdt*, 155 Vt. 448, 456, 586 A.2d 1122, 1126 (1990). We will affirm a judgment on the pleadings if the movant's pleadings contain no allegations that, if proved, would permit recovery. See *id.*

Plaintiffs allege the following events. On the date in question, Jacob Rower was nineteen years old and David Woodward was seventeen. On July 4, 1996, Heather Pierson purchased alcohol for Rower and Woodward. In the afternoon of July 5th, Rower and Woodward went to a camp site on Hall's Lake in Newbury that was owned by defendants Duncan and Geraldine Leete, who were not there. Rower consumed alcohol and gave alcohol to Donald Leete, age forty-five, the son of Duncan and Geraldine Leete. Jacob Rower's car was parked in view of Donald Leete, and Donald knew or should have known that Rower intended to drive the car. Donald Leete had previously held various parties on his parents' property at which minors consumed alcohol. Plaintiffs also allege that Donald's parents knew that he had held large gatherings on their property where alcohol was consumed and that they knew that Donald regularly held a Fourth of July party where alcohol was present. Finally, plaintiffs claim that Duncan and Geraldine Leete knew or should have known that alcohol would be furnished to minors at the party on July 5, 1996.

Plaintiffs do not allege that Donald had ever held a party previous to July 5, 1996, at which minors were furnished with alcohol. They do not allege that Donald Leete knew that either Rower or Woodward was under the legal drinking age. Plaintiffs fail to allege that on July 5, 1996, Donald Leete furnished any alcohol to either Rower or

Woodward. Plaintiffs do not allege that Duncan and Geraldine Leete were present at the party, nor do they allege that the elder Leetes provided any of the alcohol consumed there. They do not even allege that the elder Leetes knew of the party on July 5, 1996, only that they knew of other July Fourth parties in preceding years.

With regard to defendant Sally Spear, plaintiffs allege the following facts. On July 5, 1996, Rower and Woodward visited a mobile home in Newbury, Vermont occupied by Gidget Rollins, aged nineteen. The home was owned by defendant Sally Spear, Gidget Rollins's mother. Gidget Rollins knew or should have known that Rower and Woodward were under twenty-one. Rower and Woodward consumed alcohol on the Spear premises. They allege that Spear knew or should have known that her home was sometimes used by her daughter and other minors as a place to consume alcoholic beverages.

The pleadings do not allege that Gidget Rollins invited Rower and Woodward to come to the mobile home. They do not allege that Rollins furnished alcohol to Rower and Woodward. They fail to allege that Rower's car was present or visible from the Spear premises or that Rollins had any reason to know Rower intended to drive a car. Plaintiffs do not allege that Sally Spear was present on July 5, 1996. There is no allegation that Spear supplied any alcohol that was consumed on the premises. Nor do they allege that Spear had arranged the gathering in any way. Indeed, it is not clear from the pleadings whether Spear lived in the mobile home with her daughter or lived elsewhere. There is no allegation that Spear knew or should have known that minors would consume alcohol on her premises on July 5, 1996, only that she should have known that minors had consumed alcohol there "at various times."

Plaintiffs brought actions for negligent operation of a motor vehicle, negligent entrustment, and negligent supervision against Jacob Rower, the driver, and his parents, Kenneth and Leslie Rower. They also include as defendants Heather Pierson, who is alleged to have purchased alcohol for Rower and Woodward on July 4, Gidget Rollins and Donald Leete, who were present while the alcohol was consumed. Lastly, plaintiffs sued Sally Spear and Duncan and Geraldine Leete, the owners of property where Rower consumed alcohol. Gidget Rollins and Sally Spear moved for judgment on the pleadings and/or summary judgment; Duncan and Geraldine Leete moved for judgment on the pleadings. The trial court granted both motions for judgment on the pleadings, holding that property owners do not owe a duty to individuals injured by minors attending social

gatherings on their property if the owners are neither present nor furnish the alcohol consumed. Because plaintiffs never alleged that Spear or the elder Leetes were present on July 5, 1996, or furnished the alcohol consumed, we agree that defendant-parents were entitled to judgment on the pleadings.

## I.

Plaintiffs propose to extend social host liability to unprecedented reaches. Although social host liability evolved in response to the well-documented tragedies of drunk-driving accidents, we cannot justify expanding the meaning of "host" to encompass all property owners, at all times, regardless of whether they were present on their property and regardless of whether they had any opportunity for control.

The case usually cited as the origin of such a claim recognized the potential for social host liability only in dicta. See *Langle v. Kurkul*, 146 Vt. 513, 510 A.2d 1301 (1986). There, William Langle attended a party hosted by Walter Kurkul, Sr. and drank alcohol. Langle then went to Gary Kurkul's home to swim in his pool. While the plaintiff was preparing to dive from the railing of the pool, the railing broke and Langle fell headfirst into the pool. The accident broke Langle's neck and left him a quadriplegic. The plaintiff sued the Kurkuls, and the parties settled all claims except one for negligent serving of liquor. The remaining defendant, Walter Kurkul, Sr., moved to dismiss for failure to state a claim upon which relief can be granted under either the Dram Shop Act, or common law negligence. The trial court granted the motion and we affirmed. See *id.* at 515, 510 A.2d at 1302.

We interpreted the unambiguous language of the Dram Shop Act, 7 V.S.A. § 501, to provide a remedy only for third parties injured by drunk driving, not a remedy for the drunk person against the person who served the alcohol. See 146 Vt. at 515-16, 510 A.2d at 1303. We rejected the holdings of some other jurisdictions that dram shop acts preempted common law remedies, see *id.* at 516, 510 A.2d at 1303 (citing *Cunningham v. Brown*, 174 N.E.2d 153 (Ill. 1961); *Snyder v. Davenport*, 323 N.W.2d 225 (Iowa 1982); and *Browder v. International Fidelity Ins. Co.*, 321 N.W.2d 668 (Mich. 1982)).

Second, we addressed the common law negligence action and found a social host had no duty under common law negligence to an intoxicated adult guest in factual situations not involving drunk driving. See *Langle*, 146 Vt. at 517-20, 510 A.2d at 1303-04. Without compelling policy reasons offered, we declined to impose a new duty

of care on social hosts, "absent a situation where the social host furnishes alcoholic beverages to one who is visibly intoxicated and it is foreseeable to the host that the guest will thereafter drive an automobile, or, where the social host furnishes alcoholic beverages to a minor." *Id.* at 521, 510 A.2d at 1306. Plaintiffs would have us extend this dictum referring to the duty of a social host to not furnish alcohol to minors, to all property owners on whose property minors might consume alcohol they have acquired by themselves.

The language of "furnishing" used in *Langle* derives from the Dram Shop Act and, therefore, to understand the cause of action we outlined in the dictum in *Langle*, we must turn to the interpretation of 7 V.S.A. § 501. To bring the facts in the instant case within the common law cause of action contemplated in *Langle*, plaintiffs would have to show that defendants (1) were social hosts who (2) "furnished" alcohol to Jacob Rower.

We need not answer the question of what is meant by "social host" because plaintiffs' claim fails to show that defendants "furnished" alcohol. We examined the meaning of "furnish" in *Carrick v. Franchise Associates, Inc.*, 164 Vt. 418, 671 A.2d 1243 (1995). There, we held that "furnishing" as used in the Dram Shop Act "connotes possession or control of the alcoholic beverage by the furnisher." *Id.* at 420, 671 A.2d at 1244. We relied on the interpretation by several other courts that "furnishing" requires some affirmative act or active part in the provision of alcohol. See *id.* (citing *Bennett v. Letterly*, 141 Cal. Rptr. 682, 684 (Ct. App. 1977); *Lather v. Berg*, 519 N.E.2d 755, 761 (Ind. Ct. App. 1988)). See also *Alumni Ass'n v. Sullivan*, 572 A.2d 1209 (Pa. 1990) (rejecting standard of "knew or should have known" for social host liability and requiring serving, supplying or purchasing of liquor for liability). In *Carrick* itself, because the plaintiff-franchisees had failed to allege that the defendant-franchisers ever had possession, and failed to show that the defendants had control of the alcoholic beverages at issue, we affirmed the trial court's grant of summary judgment. See 164 Vt. at 421, 671 A.2d at 1245.

Using this understanding of "furnishing," plaintiffs in this case must allege that defendants had either possession or control over the alcohol consumed by Jacob Rower. Plaintiffs have never contended that defendants were present on the night of July 5, 1996; therefore they cannot argue, and indeed have not argued, that defendants possessed the alcohol that Rower consumed. They are therefore left with "control" of the alcohol to satisfy the interpretation of "furnish."

Plaintiffs have similarly failed to allege defendants had control of the alcohol consumed on July 5, 1996. Given that defendants were not

present, had not supplied the alcohol, nor arranged the parties, it is difficult to see how defendants could have obtained control over the alcohol. Plaintiffs would have us hold that control over land is the same as control over alcohol that is consumed on that land. The most that can be said is that defendants could have forbidden their adult children to use the land.

Other states that have considered similar situations have required that in addition to controlling access to land, the defendants must have had actual control over the alcohol in some way. See *Ulwick v. DeChristopher*, 582 N.E.2d 954, 957 (Mass. 1991) ("We think the factor of control should continue to be the dominant consideration in a [negligence action against a social host]."); *Dickinson v. Edwards*, 716 P.2d 814, 819 (Wash. 1986) ("The relevant inquiry [in determining negligence] is who had the authority to deny further service of alcohol when intoxication became apparent."). In the instant case, defendants were not present at the time that Rower consumed his own alcohol. Cf. *Ulwick*, 582 N.E.2d at 957 ("[t]he ability effectively to control a guest's excessive drinking is not present when the liquor belongs to the guest"). We hold that landowners are not liable for injuries caused by the consumption of alcohol on their property where they were not present, did not furnish the alcohol, and did not control the alcohol consumed.

## II.

Plaintiffs have alleged that Spear and the Leetes negligently entrusted real property to their adult children, Gidget Rollins and Donald Leete. Assuming, arguendo, that ownership of real property could be equated with control of alcohol consumed but not provided on that property, plaintiffs must then meet the requirements of a common law negligence claim. The elements of common law negligence are: (1) defendants owed a legal duty to protect plaintiff from an unreasonable risk of harm; (2) defendants breached that duty; (3) defendants' conduct was the proximate cause of plaintiffs' injuries; and (4) plaintiffs suffered actual damage. See *Langle*, 146 Vt. at 517, 510 A.2d at 1304 (citing W. Prosser and W. Keeton, The Law of Torts § 30, at 164-65 (5th ed. 1984).

Therefore, plaintiffs must first satisfactorily allege that defendants owed them a legal duty to conform to a certain standard of conduct. Although a duty often arises from the ability to control and therefore the legal analysis overlaps somewhat with the analysis of "furnishing," the analysis is not co-extensive.

The general rule is stated in § 315 of the Restatement (Second) of Torts. "There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless (a) a special relation exists between the actor and the third person . . ., or (b) a special relation exists between the actor and the other . . . ." Restatement (Second) of Torts § 315 (1965). Examples of the first kind of special relation are master-servant and parent-minor child. See *id.* §§ 316, 317. Examples of the second relation are common carriers, innkeepers, or custodians. See *id.* §§ 314A, 320. Plaintiffs must therefore show that the instant circumstances gave rise to a duty, under an exception to the general rule that there is no duty.

To show a duty, plaintiffs cite §§ 308, 318, 319 and 379 of the Restatement (Second) of Torts as creating a duty to protect. Plaintiffs have not, however, alleged the necessary elements of any of the circumstances outlined by the Restatement and therefore have not shown that a duty existed on the part of the property owners to conform their conduct to a certain standard.

## A.

Plaintiffs rely primarily on § 318 of the Restatement (Second) of Torts, entitled Duty of Possessor of Land or Chattels to Control Conduct of Licensee. Under § 318, property ownership alone is not sufficient to produce liability for the activities of a licensee. It reads:

> If the actor permits a third person to use land or chattels in his possession otherwise than as a servant, he is, *if present,* under a duty to exercise reasonable care so to control the conduct of the third person as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if the actor
>
> (a) knows or has reason to know that he *has the ability to control the third person,* and
>
> (b) knows or should know of *the necessity and opportunity for exercising such control.*

*Id.* § 318 (emphasis added). Liability under § 318 flows from control over a person. Contrary to what plaintiffs assert, "presence" is central to the principle of liability articulated in § 318. The owner's presence when the activity occurs is a prerequisite for the owner's *ability* and *opportunity* to exercise control over the person engaging in the activity.

■ In the caveat, although the drafters suggest that actual presence may not be required in all cases, they are quick to note that the owner must still be "in the vicinity" and "informed of the necessity and opportunity of exercising . . . control [over the conduct of the third person]." *Id.* Thus, property owners must already be in a position to exercise actual control over a licensee's conduct before they have a legal duty to control the licensee. To have a duty to control the activities of a licensee, landowners must either be in a position to exert direct control over those activities or must have so facilitated the activities of the licensee such that they have taken on the duty. Plaintiffs have failed to allege either of these circumstances and therefore are outside the scope of § 318.

Plaintiffs also make reference to § 308, entitled Permitting Improper Persons to Use Things or Engage in Activities. Section 308 provides:

> It is negligence to permit a third person to use a thing or *to engage in an activity which is under the control of the actor*, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.

*Id.* § 308 (emphasis added). Plaintiffs claim that this section is applicable because the parent-landowners controlled their real property, which they label "a thing" under § 308. They assert that the thing, the land, was a location for underage drinking that created an unreasonable risk of harm to others.

■ Although § 308 was intended to encompass negligent entrustment of a car to a drunk person and thus might be relevant to plaintiffs' claim against Rower's parents, it was explicitly intended to *exclude* ownership of real property. Comment (d) directs us to § 318, rather than § 308, for the factors determining liability for permitting another person to use property. See *id.* § 308, cmt. d. Plaintiffs present no case law applying § 308 that would justify reading out of it a factor central to its application. Mere ownership of property is not, as discussed above, the same as control over the activities occurring on that property.

As for the cases applying § 318 on which plaintiffs rely, both are consistent with the principle that control over the licensee's activities is needed in addition to legal control over the property. See *Morgan v. Perlowski*, 508 N.W.2d 724, 727-28 (Iowa 1993) (social host who was

present had duty under § 318 to take steps to exercise control over guests who fought when host knew of such danger and had opportunity to exercise control over them), *overruled on other grounds, Sheets v. Ritt, Ritt & Ritt, Inc.*, 581 N.W.2d 602 (Iowa 1998); *Karadanis v. Newcomb*, 698 P.2d 872, 874-75 (Nev. 1985) (foreman of contracting company who directed that man-lift be installed in violation of safety regulations and maintained it in unsafe condition could be held personally liable under § 318 to worker who fell from lift because foreman was partner in entity that leased property).

Plaintiffs' reliance upon employer-employee and landlord-tenant law to show a similarity between their proposed rule and the principles governing the duties of a property owner with respect to the activities of a licensee is misplaced. The liability of an employer for the actions of an employee on his property is based upon the control engendered by the master-servant relationship, not upon the employer's ownership of the land where the employee works. See *Bradley v. H.A. Manosh Corp.*, 157 Vt. 477, 481, 601 A.2d 978, 981-82 (1991) (holding garage owner liable for mechanic's off-duty negligence where owner-employer had control over servant, knew of risk and failed to act). With respect to landlord-tenant law, plaintiffs cite only § 379 of the Restatement (Second) of Torts as supporting their argument. This section applies when a landlord transfers possession of land to a tenant which he knows or should know is already in a dangerous condition. See Restatement (Second) of Torts § 379. The basis for liability under § 379 is control over the condition of the land, not legal ownership of it, which is entirely consistent with the requirements of control in §§ 308 and 318.

Furthermore, examination of the Restatement (Second) of Property presents a different picture than that sketched by plaintiffs. Landlord liability for real property turns on the landlord's control of the property (or part of the property) and the landlord's knowledge of a dangerous condition. See, e.g., Restatement (Second) of Property § 17.3 (1977) (landlords leasing part of property and retaining control of part may be subject to liability for part that they control and for conditions of which they have knowledge). See also 2 R. Powell, Powell on Real Property § 16B.08[5] (1999) (where general rule of no duty to protect does not apply, "duty of protection exists because of the allocation of control and the power to act as between the parties.").

Plaintiffs have not alleged defendants had control of the alcohol on July 5, 1996 sufficient to bring their cause of action within § 318 of the Restatement, nor can § 308 create a duty of care where the

Restatement itself indicates it does not apply to the use of real property.

## B.

Plaintiffs also assert that defendant Spear lived with her daughter and can be held liable under § 319 of the Restatement (Second) of Torts because she should have known that her daughter is prone to hosting social gatherings for underage persons where alcohol is available. Section 319 places a duty upon a person who takes charge of another to take reasonable care to control that person from causing harm to others. See Restatement (Second) of Torts § 319. This section, however, covers circumstances utterly different from the one at issue here. It applies, for example, where the person controlled is infirm in such a way that any uncontrolled social contact would pose a dangerous risk to others and an institution has been charged with caring for that person. See *id.* § 319, illus. 1, 2 (mentioning hospitals for contagious diseases and institutions guarding insane people). Foreign cases that have allowed recovery under § 319 have usually involved inmates in prisons, county juvenile halls, and ex-inmates living in halfway houses. See, e.g., *Davis v. Fulton County, Ark.*, 884 F. Supp. 1245, 1255 (E.D. Ark. 1995) (holding deputy sheriff who granted pretrial detainee unsupervised release from detention owed plaintiff duty of care); *C.J.W. By and Through L.W. v. State*, 853 P.2d 4, 10-12 (Kan. 1993) (holding state owed third parties duty of taking reasonable steps to prevent rapes of inmates at county juvenile hall by violent and sexually deviant juveniles). In the case of prisoners and involuntarily committed mental patients, the institution is expected to exercise a greater degree of control over the third person than a parent is expected to exercise over an autonomous, adult child.

■ Furthermore, other jurisdictions have considered and rejected liability under § 319 in cases involving drunk driving. See *Mulvihill v. Union Oil Co.*, 859 P.2d 1310, 1312 (Alaska 1993) (affirming grant of summary judgment for defendant employer and co-employee who had driven drunk driver home before drunk driver returned to highway and caused accident); *Landis v. Rockdale County*, 445 S.E.2d 264, 265-68 (Ga. Ct. App. 1994) (county, sheriff and deputy sheriff had no duty to arrest drunk driver whom they had stopped shortly before he crashed into plaintiff's decedent's car). Plaintiffs' claim does not survive even the first prong of the common-law negligence analysis. As defendants owed no duty, we need not discuss negligence further.

### III.

As a last resort, plaintiffs argue that we may "expand the margins of social host liability" in Vermont. We will not "recognize a new cause of action or enlarge an existing one without first determining whether there is a compelling public policy reason for the change." *Langle*, 146 Vt. at 520, 510 A.2d at 1306. We agree that the costs of underage drinking are high and that the circumstances of this particular case are tragic. We cannot agree, however, that imposing a duty upon all owners of real property to control the activities of all licensees on the basis of mere ownership would be either fair to the owners or in the best interests of public policy.

Social hosts are quite distinct from commercial proprietors. Commercial proprietors have a pecuniary interest and profit motive for their actions, providing both a motive and the "financial wherewithal" to control patrons and supervise alcohol consumption. See *Burkhart v. Harrod*, 755 P.2d 759, 760-61 (Wash. 1988). In addition, commercial proprietors are often better able to judge intoxication based on their professional experience. See *Hickingbotham v. Burke*, 662 A.2d 297, 300, 301 (N.H. 1995) (recognizing cause of action for reckless service of alcohol but noting distinctions between social hosts and licensees).

We have not found any decision that extends social host liability to the lengths advocated by plaintiffs. The courts that have considered a situation where parents were neither present, nor supplied the alcohol in any way, have consistently refused to impose a duty on those parents. See *Kovar v. Krampitz*, 941 S.W.2d 249 (Tex. Ct. App. 1996) (grandfather who owned farm where grandson had party was not liable to eighteen-year-old who got alcohol from another guest and died while driving intoxicated); *Martin v. Watts*, 508 So. 2d 1136 (Ala. 1987) (father who owned cabin where party was held was not liable for injuries caused by intoxicated minor guest); *Langemann v. Davis*, 495 N.E.2d 847 (Mass. 1986) (parent of social host who did not provide or make available alcohol was not liable for injuries caused by minor guest who got alcohol from another guest).

A number of courts have observed, as the Massachusetts Supreme Judicial Court did, that "the problems and implications of imposing liability [on social hosts] are extensive." See *McGuiggan v. New England Telephone & Telegraph Co.*, 496 N.E.2d 141, 146 (Mass. 1986). The Washington Supreme Court noted "social host liability would touch most adults in the state on a frequent basis." *Burkhart*, 755 P.2d at 761. Imposing liability on property owners as social hosts

would affect an even larger proportion of the state's population. We decline to do so on the facts of this case.

*Affirmed.*