# Chasidy Lamare and Charles Arnold v. North Country Animal League, Darcie Fitzgerald, and John and Jane Doe

[743 A.2d 598]

No. 98-258

Present: Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.

Opinion Filed November 12, 1999

*Clarke D. Atwell, Law Office of Robert A. Gensburg,* St. Johnsbury, for Plaintiffs-Appellants.

*Jeff W. Lively* of *Olson & Associates,* Stowe, for Defendants-Appellees.

*Beth Robinson* of *Langrock Sperry & Wool,* Middlebury, and *Roger A. Kindler* and *Paul J. Tanis,* Washington, D.C., for Amici Curiae The Humane Society of the United States, et al.

**Morse, J.** Plaintiffs Chasidy Lamare and Charles Arnold appeal a summary judgment of the Lamoille Superior Court in favor of defendants North Country Animal League, Darcie Fitzgerald, and John and Jane Doe. Plaintiffs raise numerous claims challenging the court's ruling that their possessory interest in a lost dog had been transferred to defendants under the Town of Wolcott's dog control ordinance. We affirm.

The following facts are undisputed. Plaintiffs were the co-owners of a five and one-half year old female German Shepard named Billy. They acquired the dog as a puppy and registered it with the American Kennel Club. On June 3, 1997, Billy and her five-month-old puppy broke free from their tether at plaintiffs' residence in Wolcott. Although licensed with the Town of Wolcott, Billy was not wearing her license tags at the time of her escape. The puppy returned several hours later. When Billy failed to return, plaintiffs contacted their neighbors, friends, and family with the hope that she had gone to someone's home. During the next month, plaintiffs continued to

search for Billy when they had time, but her continued absence caused them to speculate that she had been injured, killed, or stolen.

In fact, Billy was found several hours after her escape, running on the road, by a couple who brought her to Lamoille Kennel. An employee of Lamoille Kennel notified Gilbert Goff, the Wolcott animal control officer. Goff assumed control and custody of the dog under the Wolcott dog control ordinance.

As required by the ordinance, Goff placed notices describing the dog in the village store, post office, and town clerk's office. After holding Billy for nine days from the date of impoundment without any response to the notices, Goff transferred Billy into the care and custody of defendant North Country Animal League, where Billy remained for approximately three weeks.

On Sunday, July 6, plaintiff Arnold's mother contacted Goff, who told her that he had placed a dog in the League's custody. Plaintiffs called the League that day and left a message on the answering machine concerning their lost dog. On Monday, July 7, plaintiffs again contacted the League and were told that it still had the dog in its possession. Plaintiffs arrived at the League shortly thereafter and identified the dog. They asked that the dog be returned, provided American Kennel Club papers to prove ownership, and offered to pay all boarding costs. A League employee, defendant Darcie Fitzgerald, told them that the dog belonged to the League and that the only way to gain possession was to fill out an adoption application. Plaintiffs immediately completed the application, but were told that their personal references had to be contacted. Two days later, plaintiffs called the League to inquire about the status of their adoption application. A League employee informed plaintiffs that their application had been denied. When plaintiffs questioned the reason for the denial, they were told that it was not in the dog's best interests to be returned to them. Plaintiffs later learned that, in fact, the League had approved "Jane and John Doe's" adoption of Billy on July 5, prior to plaintiffs' application. Billy was spayed on July 8 and adopted by the Doe family that same day. None of the references listed in plaintiffs' application was ever contacted.

Plaintiffs then filed this action to recover their dog from the Does and for damages from the League for violation of their due process rights guaranteed by the United States Constitution. When defendants refused to disclose the identity of the Does through interrogatories, plaintiffs moved to compel disclosure. Defendants, in response, moved for a protective order to protect the Does' identity. After a hearing, the court denied plaintiffs' motion to compel.

The parties subsequently filed cross-motions for summary judgment. The court granted defendants' motion and denied plaintiffs', concluding that under *Morgan v. Kroupa*, 167 Vt. 99, 104, 702 A.2d 630, 633 (1997), the animal control officer had made reasonable efforts to locate the dog's owner by complying with the town's dog control ordinance, and that plaintiffs had failed to satisfy their requirement of conscientiously searching for the dog. The court further concluded that when the animal control officer gave the dog to the League, plaintiffs' property rights were extinguished and the League became the rightful owner of the dog. Finally, the court ruled that plaintiffs could not challenge the validity of the animal control ordinance because they had failed to name the town as a party to the action. This appeal followed.

Although variously stated, plaintiffs essentially contend the court erred in: (1) applying *Morgan* instead of the lost property statutes, see 27 V.S.A. §§ 1101-1110; (2) declining to address the validity of the town's animal control ordinance; (3) failing to find that the ordinance was invalid under state law and the United States Constitution; and (4) refusing to order disclosure of the Does' identities.

## I.

In *Morgan*, we held that when the finder of a lost dog makes a reasonable effort to locate the owner and responsibly cares for the animal over a reasonably extensive period of time, the finder may be awarded possession of the dog. See 167 Vt. at 104, 702 A.2d at 633. We noted several factors that the court should consider in making this discretionary decision, including the reasonableness of the search efforts by both the owner and the finder, and the length of time that the finder responsibly cared for the dog.

*Morgan* involved a dispute between private parties and was governed by common law principles. This case, in contrast, concerns the rights and responsibilities of a public entity vis a vis the owners of a lost dog and is controlled by state statutes and local ordinances. Thus, the trial court's task here was confined to interpreting and applying the pertinent legislative enactments and determining their validity. The trial court's application of *Morgan* was therefore inapposite, but as we reach the same result on different grounds we need not reverse the judgment. See *Putter v. Montpelier Pub. Sch. Sys.*, 166 Vt. 463, 471, 697 A.2d 354, 359 (1997) (we may affirm correct judgment even though grounds for it are erroneous).

The Wolcott dog control ordinance provides:

> If the owner of the dog is unknown, the officer shall, within forty-eight (48) hours of impoundment, post an advertisement in the Town Clerk's Office and at least one public place in the Town. Said notice shall describe the dog, state when and where the dog was impounded and declare that unless the owner or person entitled to possession of the dog shall claim the same and pay all charges set forth below within seven (7) days after posting of such notice, the dog office shall sell the dog, give the dog away or dispose of it in a humane way.

Town of Wolcott Dog Control Ordinance, § 7(C).

█ The record evidence supports the trial court's conclusion that the local animal control officer complied with the notice requirements of the ordinance, and properly transferred ownership of the dog to the League under its provisions. Indeed, plaintiffs do not challenge these findings, but instead contend that the ordinance was invalid because it was not authorized by state statute and violated their constitutional right to due process. The trial court declined to address these claims, ruling that they were not cognizable because plaintiffs had failed to name the town as a party defendant. The first issue, therefore, concerns the soundness of this ruling.

In any proceeding for declaratory relief that involves the validity of a municipal ordinance, the municipality "shall be made a party and shall be entitled to be heard." 12 V.S.A. § 4721. If the ordinance is alleged to be unconstitutional, the Attorney General is also entitled to be served and heard. See *id.* Although plaintiffs' complaint in this case was not specifically denominated an action for declaratory judgment, the statute unquestionably applied because the validity of the ordinance was raised at trial, briefed, and argued by the parties. See V.R.C.P. 15(b) (when issues not raised by pleadings are tried by express or implied consent of parties, they shall be treated in all respects as if they had been raised by pleadings).

█ Section 4721 essentially makes the town whose ordinance is at issue a "necessary" party, that is, one whose interest in the subject matter of the action is such that its disposition may "impair or impede [its] ability to protect that interest." V.R.C.P. 19(a); see also *Price v. Leland*, 149 Vt. 518, 520-21, 546 A.2d 793, 795 (1988) (holding that town was not necessary party to the proceeding under 12 V.S.A.

§ 4721 because it did not have "cognizable interest" in outcome). As the Reporter's Notes to Rule 19 explain, if a necessary party "has not been joined and can be served with process, the court, on defendant's motion . . . or on its own motion, must order him joined." Reporter's Notes, V.R.C.P. 19.

Having correctly determined that the town was a necessary party under § 4721, the court should have ordered that it be joined rather than simply decline to address the issues raised by plaintiffs. The trial court's oversight, however, does not necessarily require that the judgment be reversed. When joinder of a necessary party is not feasible, a trial court may nevertheless proceed if a judgment can be rendered that is not prejudicial to the absent party, or if — through the shaping of relief — the prejudice may be "lessened or avoided." V.R.C.P. 19(b); see also *Grassy Brook Village, Inc. v. Blazej, Inc.*, 140 Vt. 477, 481, 439 A.2d 273, 275-76 (1981). This Court, similarly, may consider the merits of a judgment that is technically not ripe for review when dismissal would only result in another appeal, the merits of the question have been fully briefed, and the Court has reviewed the case. See *Perry v. Medical Practice Bd.*, 169 Vt. 399, 402, 737 A.2d 900, 902 (1999).

■ Considering these factors, we conclude that it is equitable and expedient for the Court to address the merits of plaintiffs' claims notwithstanding the trial court's failure to order joinder of the town and consider the claims in the first instance. A remand would undoubtedly result in a second appeal, the issues have been fully briefed and argued, and the Court has carefully considered their merits. Nor does the town stand to be prejudiced by our consideration of the claims; defendant North Country Animal League has zealously defended the ordinance in question, ably supported by an amicus curiae brief on behalf of The Humane Society of the United States and various local humane societies.

## II.

■ Plaintiffs first contend that the town did not have the authority under state law to transfer possession of Billy to the League. We have consistently adhered to the rule that "a municipality has only those powers and functions expressly granted to it by the legislature, such additional functions as may be incident, subordinate or necessary to the exercise thereof, and such powers as are essential to the declared objects and purposes of the municipality." *Robes v. Town of Hartford*,

161 Vt. 187, 190, 636 A.2d 342, 345 (1993). If any fair, reasonable, or substantial doubt exists concerning the municipality's authority, we resolve it against the municipality. See *id.* Plaintiffs here note that under 20 V.S.A. § 3549 towns are authorized only to "regulate the keeping of domestic pets or wolf-hybrids and their running at large." They assert that this does not include the power, as provided in the town's ordinance, to "sell the dog, give the dog away or dispose of it in a humane way."

There is no dispute that the statute authorizing towns to regulate the running at large of domestic pets empowered the town to take possession of Billy when she was found running on the road unattended and without license tags. Yet, plaintiffs argue that once having taken possession, the town lacked the corollary authority to transfer possession of the dog and responsibility for its upkeep to the League after the requisite seven-day redemption period had passed. The argument is unpersuasive. The town must have the ability to make some humane disposition of the animal after a certain period of impoundment has expired. Plaintiffs' narrow construction of the statute would effectively compel the town to care for impounded domestic animals in perpetuity if the rightful owner never came forward, a result plainly at odds with reason and sound policy. See *Roddy v. Roddy*, 168 Vt. 343, 347, 721 A.2d 124, 128 (1998) (we must construe statutes to avoid absurd results unintended by Legislature). We conclude, therefore, that the provision of the ordinance authorizing the town to sell or otherwise dispose of the animal in a humane fashion constituted a necessary and essential power under the enabling statute, and therefore did not exceed the town's authority. See *Robes*, 161 Vt. at 190, 636 A.2d at 345.

## III.

Plaintiffs next assert that the ordinance violated their due process rights by depriving them of property without adequate notice and an opportunity to be heard. In *Town of Randolph v. Estate of White*, 166 Vt. 280, 285, 693 A.2d 694, 697 (1997), we noted that "due process concerns arise whenever the state deprives an individual of an interest in the use of real or personal property." The process that must be afforded, however, varies depending upon the context. "By its nature, due process comprehends a wide range of procedural protections tailored to myriad situations of state action affecting protected interests." *Lucas v. Hahn*, 162 Vt. 456, 459, 648 A.2d 839, 842 (1994).

In determining whether a given procedure satisfies due process, we have applied the factors set forth by the United States Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). These are: (1) the private interest affected by the state action; (2) the risk of erroneous deprivation of the affected private interest under the procedures used; and (3) the governmental interest involved, including fiscal and administrative burdens. See *Town of Randolph*, 166 Vt. at 284, 693 A.2d at 696.

The private interest at stake in this matter is a qualified one. In *Nicchia v. New York*, 254 U.S. 228, 230 (1920), the United States Supreme Court observed that "[p]roperty in dogs is of an imperfect or qualified nature and they may be subjected to peculiar and drastic police regulations by the State without depriving their owners of any federal right." This Court has similarly noted that dogs "belong to that class of property the keeping of which may be stringently regulated by the Legislature in the exercise of its police power — even to the extent of providing for their destruction, in given circumstances, without judicial proceedings and in a most summary way." *McDerment v. Taft*, 83 Vt. 249, 250, 75 A. 276, 276 (1910).

We have recently reaffirmed the principle that "'property' in domestic pets is of a highly qualified nature, possession of which may be subject to limitation and control." *Morgan*, 167 Vt. at 104, 702 A.2d at 634. As we noted in *Morgan*, state law provides that an animal shall be deemed abandoned if placed in the custody of a veterinarian, kennel or other establishment for treatment, board, or care for a specified period of time. See *id.* (citing 20 V.S.A. § 3511). Domestic pets suspected of having been exposed to rabies may be confined or impounded, see 20 V.S.A. § 3806, or even killed if reasonably necessary, see *id.* § 3807(a), and "vicious" domestic pets may be removed from the owner and "disposed of in a humane way." *Id.* § 3546(c).

*Morgan* discussed the important public interests that justify the stringent regulation of stray dogs and other domestic animals. "A stray dog obviously requires care and shelter, and left unattended could pose hazards to traffic, spread rabies, or exacerbate an animal overpopulation problem if unneutered." *Morgan*, 167 Vt. at 103, 702 A.2d at 633. At the same time, *Morgan* recognized that a dog is an inherently social creature whose "value derives from the animal's *relationship* with its human companions." *Id.* Thus, while municipal shelters or pounds may provide temporary safety for the public and security for the animal, longterm residence in such facilities is

decidedly not in the public's or the animal's interest. We note in this regard the several studies cited in the amicus curiae brief of The United States Humane Society which demonstrate that longterm confinement is severely detrimental to the health of dogs and a considerable expense to the impounding agency.

The qualified right to possession of dogs and other animals, and the strong public interest in assuring their permanent placement in a suitable environment, amply supports the town's decision to provide for the sale or transfer of impounded dogs if unclaimed after seven days. Indeed, courts elsewhere have uniformly upheld local ordinances authorizing the destruction or transfer of possessory rights in stray animals impounded for *less* than one week. See, e.g., *Thiele v. City & County of Denver*, 312 P.2d 786, 792 (Colo. 1957) (rejecting due process challenge to ordinance providing for disposal of impounded dogs after three days); *Johnston v. Atlanta Humane Soc.*, 326 S.E.2d 585, 587 (Ga. Ct. App. 1985) (in view of "overriding public policy," ordinance providing for disposal of impounded dog after three days did not constitute unconstitutional taking of property); *Professional Houndsmen of Miss., Inc. v. County of Boone*, 836 S.W.2d 17, 21-22 (Mo. Ct. App. 1992) (rejecting due process challenge to ordinance authorizing disposition of impounded dog after five days); *Jenkins v. City of Waxahachie*, 392 S.W.2d 482, 484 (Tex. Civ. App. 1965) (rejecting constitutional challenge to ordinance providing for destruction or other disposition of impounded dog if not claimed within seventy-two hours). These and other decisions have also rejected due process challenges to notice provisions far less rigorous than those at issue here. See *Thiele*, 312 P.2d at 792 (upholding as "reasonable and adequate" ordinance provision requiring posting of dog's description at municipal pound); *Waxahachie*, 392 S.W.2d at 484 (rejecting due process challenge where ordinance contained no notice or hearing requirements); *City of Water Valley v. Trusty*, 343 So. 2d 471, 472 (Miss. 1977) (rejecting due process challenge to ordinance providing for disposition of impounded dog after five days posted notice). These decisions are consistent with our conclusion in *Morgan*, albeit in a different context, that the owner of a lost dog may be expected to make reasonable efforts to locate an animal by contacting humane societies and other agencies and checking other public locations where notices may be posted. As we recently held in *Secretary v. Irish*, 169 Vt. 407, 413, 738 A.2d 571, 576 (1999), due-process notice standards may validly take into account the expectation and likelihood that owners will make reasonable efforts to protect their property interests.

These common sense requirements, together with the town's additional ordinances requiring that owners provide their dogs with license tags, and that the dog control officer directly contact the owner of an impounded dog if the identity is known, establish that the risks of an erroneous deprivation under the ordinance are small. Only in the limited circumstances where the owner of a lost dog has not complied with the license requirements, and has failed to take the reasonable steps of inquiring with the local pound or checking notices in the town office and other public places, is it possible that an owner will fail to receive notice within the seven-day notice period. The fact that plaintiffs in this case did not take these reasonable steps does not render the ordinance unconstitutional.

■ We conclude, in sum, that the town's posting of descriptive notices in the town clerk's office, post office, and village store — in conformity with the ordinance — did not deprive plaintiffs of their constitutional right to due process.

Finally, we note that plaintiffs' reliance on *Porter v. DiBlasio*, 93 F.3d 301 (7th Cir. 1996), is misplaced. *Porter* held that the owner of horses seized because of neglect was entitled to a hearing prior to the permanent termination of the owner's interest in the seized animals. The circumstances here, involving a stray animal with no license tags or other identification, are plainly distinguishable.

## IV.

■ Plaintiffs raise two additional claims that require little discussion. They contend that the trial court erred in failing to apply the notice requirements of the lost property statutes, under 27 V.S.A. §§ 1101-1110. Inasmuch as we held that these statutes did not apply to lost dogs in *Morgan*, 167 Vt. at 102-03, 702 A.2d at 632-33, there was plainly no error.

■ Plaintiffs also contend that the court erred in denying their motion to compel disclosure of the Doe defendants' identity. Discovery rulings are within the sound discretion of the trial court and will not be disturbed on appeal absent a clear abuse or withholding of that discretion. See *Medical Center Hosp. of Vt., Inc. v. City of Burlington*, 152 Vt. 611, 627, 566 A.2d 1352, 1369 (1989). The trial court ruled that plaintiffs had made no showing that the Does' identity was relevant, and plaintiffs have not demonstrated relevance on appeal. Moreover, absent compelling reasons for disclosure, we agree with the court's conclusion in *Johnston*, 326 S.E.2d at 588, that

disclosure of the identity of the adopter "could lead to harassment and limit or curtail adoption so as to lead to the less desirable alternative of destruction." Accordingly, we find no error in the court's ruling.

## V.

Any case involving possession of a domestic pet predictably arouses broad public interest and concern. The actions of the League in this case certainly warrant such concern; it was, to say the least, insensitive in its dealings with plaintiffs. Although plaintiffs' action for repossession of the dog and for damages based upon alleged constitutional violations lacks merit, this is not to say that a future case seeking recovery for the emotional distress or other damages resulting from the negligent handling of an impounded animal — a claim not alleged here — would be unsuccessful. In this case, we are bound to conclude that the town's actions fully complied with its animal control ordinance and that its ordinance provided ample notice to plaintiffs consistent with state law and due process requirements.

*Affirmed.*