2009 VT 52

# Susan Goodby and Robert Goodby v. Vetpharm, Inc. d/b/a BCP Veterinary Pharmacy, Valerie Yankauskas, D.V.M., Paula Yankauskas, D.V.M., Cynthia Pratt, D.V.M., and Charles Powell, D.V.M.

[974 A.2d 1269]

No. 08-030

Present: Reiber, C.J., Johnson, Skoglund and Burgess, JJ., and Toor, Supr. J., Specially Assigned

Opinion Filed May 8, 2009

64

*Pamela L. Dein,* Bridgewater, and *Steven M. Wise,* Coral Springs, Florida, for Plaintiffs-Appellants.

*Thomas P. Simon* of *McCormick, Fitzpatrick, Kasper & Burchard, P.C.,* Burlington, for Defendant-Appellee Vetpharm, Inc.

*Samuel Hoar, Jr.* of *Dinse, Knapp & McAndrew, P.C.,* Burlington, for Defendants-Appellees Yankauskas and Pratt.

*Vincent Illuzzi,* Orleans, and *James E. Burns* and *Nicole A. Roth* of *Orrick, Herrington & Sutcliffe LLP,* San Francisco, California, for Amicus Curiae Animal Legal Defense Fund.

*Elizabeth H. Miller* of *Spink & Miller, PLC*, Burlington, for Amici Curiae American Veterinary Medical Association and Vermont Veterinary Medical Association.

*Michael Marks* of *Tarrant, Marks and Gillies*, Montpelier, for Amici Curiae Vermont Federation of Dog Clubs, Animal Health Institute, American Kennel Club and Pet Industry Joint Advisory Council.

¶ 1. **Burgess, J.** This case presents two questions: first, whether noneconomic damages are available when a pet dies due to negligent or wanton acts of veterinarians and a pharmaceutical company; second, whether a claim for negligent infliction of emotional distress lies for the death of a pet when its human companion was not within any so-called zone of danger at the time of the mishap. We answer both questions in the negative and affirm the superior court's order of dismissal.

¶ 2. Plaintiffs, the owners of two cats who allegedly died from treatment and medication supplied by defendants, appeal from the superior court's grant of partial judgment on the pleadings for defendants. The trial court's order dismissed plaintiffs' claims for loss of companionship and society and severe emotional distress, as well as their complaint for negligent infliction of emotional distress. The first two counts are for noneconomic damages claimed by plaintiffs as part of their causes of action for breach of implied warranty of merchantability, breach of express warranty of merchantability, breach of implied warranty of merchantability for a particular purpose, negligence and wantonness, breach of the Vermont Consumer Fraud Act, and breach of contract. Initially, plaintiffs received the superior court's permission to take an interlocutory appeal from the order, but defendants opposed the appeal, and this Court dismissed it as improvidently granted. Plaintiffs then voluntarily dismissed their remaining claims for economic damages so that they could proceed with a direct appeal of the superior court's partial judgment on the pleadings.[*]

---

[*] Defendants argue that plaintiffs in fact voluntarily dismissed all of the remaining causes of action, and not just their claims for economic damages. Defendants urge this Court to rule that plaintiffs' two claims for noneconomic damages are now moot because the case no longer includes any underlying cause of action upon which to claim damages — economic or noneconomic — aside from the NIED cause of action dismissed in toto by the trial court's judgment on the pleadings.

¶ 3. When reviewing a grant of judgment on the pleadings, we take as true "all well-pleaded factual allegations in the nonmovant's pleadings," including "all reasonable inferences to be drawn from them." *Knight v. Rower*, 170 Vt. 96, 98, 742 A.2d 1237, 1239 (1999). Any "contravening assertions in the movant's pleadings" are considered false. *Id.* Where defendants move for judgment on the pleadings, they "may not secure a judgment" if the "plaintiff's pleadings contain allegations that, if proved, would permit recovery." *Thayer v. Herdt*, 155 Vt. 448, 456, 586 A.2d 1122, 1126 (1990). In the present case, after taking all of plaintiffs' allegations as true, we affirm the trial court's judgment on the pleadings dismissing the claims for noneconomic damages and NIED.

¶ 4. According to plaintiffs' allegations, their two cats were being treated for hypertension by defendant veterinarians Paula Yankauskas, Valerie Yankauskas, Cynthia Pratt, and Charles Powell at Lamoille Valley Veterinary Services. The prescribed treatment for the cats' hypertension was the administration of one 1.25 milligram tablet of amlodipine per cat per day. Plaintiffs followed this treatment plan, and purchased a refill of the amlodipine from the veterinary clinic in early December 2002. The clinic dispensed the amlodipine from a stock bottle of the drug manufactured by defendant Vetpharm, a Texas corporation whose primary business is selling compounded veterinary drugs. According to plaintiffs, this refill batch of the amlodipine initiated a series of events culminating in their cats' deaths.

¶ 5. The day after plaintiffs began administering the refill amlodipine to their cats, they noticed that the cats seemed ill. The

---

We are not persuaded by this argument. The superior court's judgment on the pleadings dismissed plaintiffs' claims for noneconomic damages, but the noneconomic damages were not dismissed in a vacuum, they were dismissed insofar as the court concluded that they were not supportable as an element of plaintiffs' causes of action. As virtually, if not expressly, acknowledged by defendants — responding in opposition to what they perceived as a selective motion to dismiss by plaintiffs, and insisting on an "all or nothing" dismissal — plaintiffs clearly intended to dismiss their remaining causes of action for economic damages so that they could appeal the court's Rule 12(c) dismissal of their noneconomic damages and NIED claims as the sole outstanding, and final, judgment in the case. Absent any demonstrated substantial prejudice to defendants, and despite plaintiffs' arguably inartful and unintended dismissal of "all remaining claims," plaintiffs' voluntary dismissal of their remaining claims left the previously established partial judgment on the pleadings denying the claims for noneconomic damages, and the causes of action of which they were an element, preserved for appeal.

next day, plaintiffs brought one of the cats to the veterinary clinic, where one of the defendant veterinarians diagnosed it with a respiratory illness, and treated it with an antibiotic. On the following day, plaintiffs informed another of the defendant veterinarians that their cats' conditions were worsening and that both cats were resisting taking the amlodipine. The defendant advised plaintiffs to continue administering the hypertension drug. On the fourth day after the refill of Vetpharm amlodipine, plaintiffs rushed one of the cats to the clinic, where it died hours later. That same evening, after realizing the seriousness of the first cat's condition, plaintiffs brought their other cat to the clinic. One of the defendant veterinarians treated the second cat with fluids and another drug for two or three days, but the second cat also died.

¶ 6. Plaintiffs allege that the deaths of their pets were due in part to the fact that the refill amlodipine tablets manufactured by Vetpharm contained at least twenty times the labeled dose of the drug, causing severe toxicity in plaintiffs' cats. Plaintiffs further allege that the defendant veterinarians negligently or wantonly failed to diagnose the toxicity in the cats, and that defendants improperly treated both cats after the onset of the cats' toxic responses to the amlodipine. Plaintiffs seek compensation for the lost companionship and society of their animals, and for emotional distress at having been made the unwitting agents of their pets' demise.

¶ 7. Plaintiffs recognize that the common law generally treats animals as personal property. *McDerment v. Taft*, 83 Vt. 249, 249, 75 A. 276, 276 (1910). We have said that the measure governing damages to personal property is the property's "fair market value before the injury less fair market value after the injury." *Turgeon v. Schneider*, 150 Vt. 268, 273, 553 A.2d 548, 551 (1988) (quotation omitted) (addressing damages and replacement costs to inanimate farm equipment in particular). That there may be a different or more appropriate measure of damages for the tangible loss of pets due to the negligence of others — a measure based on the particular pet's value to its owner, not simply its value to a stranger in the market — need not be considered here, since plaintiffs effectively waived that claim by dismissing all claims for general damages in favor of preserving only claims for their lost companionship and emotional distress resulting from the death of their pets.

¶ 8. We have acknowledged that pets have special characteristics as personal property. See, e.g., *Lamare v. N. Country Animal League*, 170 Vt. 115, 122, 743 A.2d 598, 602 (1999) (discussing the nature of dogs as "highly qualified" property subject to "limitation and control," but noting that the value of a dog "derives from [its] *relationship* with its human companions"); *Morgan v. Kroupa*, 167 Vt. 99, 103, 702 A.2d 630, 633 (1997) (stating that pets are a unique type of personal property due both to their emotional value to humans and because they are subject to a high degree of regulation). Plaintiffs argue that *Morgan* and *Lamare* depart from the general rule that animals are merely personal property. They contend that these cases set the stage to allow pet owners to sue for noneconomic damages when their pets are killed by the negligent acts of others. Since those cases recognize the special characteristics of companion animals, plaintiffs reason that those same characteristics make it illogical to continue to categorize pets in the same class of personal property as agriculturally useful animals or inanimate objects. In both *Morgan* and *Lamare*, however, the dogs at issue remained personal property despite their recognized human attachments, and their intangible value in monetary terms was never considered or addressed.

¶ 9. Plaintiffs and amicus Animal Legal Defense Fund urge us to adopt the view that companion animals are more properly considered as family members than personal property, so that recovery for noneconomic damage occasioned by their loss should be similarly available as for the wrongful death of next of kin. See 14 V.S.A. §§ 1491, 1492(b) (enabling recovery by parent for the "loss of love and companionship" of a deceased child and "for destruction of the parent-child relationship"); *Dubaniewicz v. Houman*, 2006 VT 99, ¶¶ 6-16, 180 Vt. 367, 910 A.2d 897 (allowing siblings to recover damages for loss of companionship under the wrongful-death statutes when sibling is the next of kin and provides evidence of physical, psychological, and emotional relationship); *Hartnett v. Union Mut. Fire Ins. Co.*, 153 Vt. 152, 156, 569 A.2d 486, 488 (1989) (holding that destruction of the parent-child relationship includes grief and mental anguish). Citing a modern regard for pets as family members, plaintiffs posit that legal recognition of the emotional damages caused by their untimely loss merely does for the wrongful death of companion animals what the Wrongful Death Act does for the death of immediate relatives due to the fault of others.

 ¶ 10. We note that under the Wrongful Death Act people may recover only for the loss of their next of kin, which can exclude recovery in many cases for the loss of many close relatives, such as grandparents or grandchildren, nieces, nephews, aunts, and uncles, as well as for the loss of nonrelatives like stepchildren, fiancés, or other closely held companions. See *Dubaniewicz*, 2006 VT 99, ¶ 6 (explaining that the term "next of kin" in the Wrongful Death Act is construed consistently with the laws of descent). Viewed from this perspective, plaintiffs request a judicial expansion of law to recover for loss of a pet what the law does not allow for loss of a broad variety of critically loved human beings. Whether the familial quality of companionship between humans and their pets is relatively new or ancient, plaintiffs seek a dramatic alteration to the law.

 ¶ 11. The changes plaintiffs request are better presented to the General Assembly. To the extent that plaintiffs ask for an extension of the Wrongful Death Act to pets, "in an area of law created entirely through statutory enactment, we are hesitant to create rights where the Legislature chose not to do so." *Gallipo v. City of Rutland*, 2005 VT 83, ¶ 49, 178 Vt. 244, 882 A.2d 1177. In terms of expanding the common law to the same effect, the general rule is that "[w]e will not '. . . enlarge an existing [cause of action] without first determining whether there is a compelling public policy reason for the change.'" *Knight*, 170 Vt. at 107, 742 A.2d at 1245 (quoting *Langle v. Kurkul*, 146 Vt. 513, 520, 510 A.2d 1301, 1306 (1986)). It is beyond dispute that our bond with pets often, if not usually, transcends their value to strangers in the marketplace. Experience tells us that emotional attachments can also attend our associations with farm and work animals. Plaintiffs fail to demonstrate a compelling reason why, as a matter of public policy, the law should offer broader compensation for the loss of a pet than would be available for the loss of a friend, relative, work animal, heirloom, or memento — all of which can be prized beyond measure, but for which this state's law does not recognize recovery for sentimental loss. We are not persuaded that a special exception to recover noneconomic damages for the loss of companion animals occasioned by negligence, damages not entirely distinct from human grief and anguish attending the negligent destruction of other personally important property, both sentient and nonsentient, should be undertaken outside of the legislative arena.

■ ■ ¶ 12. Turning to the second issue, plaintiffs cannot recover for NIED because they were never the objects of the allegedly negligent acts of the veterinarians and pharmacy, and thus were neither in physical danger themselves, nor had any reason to fear for their own physical well-being. To make a prima facie case for NIED, plaintiffs must first make a "threshold showing that [they] or someone close to [them] faced physical peril." *Brueckner v. Norwich Univ.*, 169 Vt. 118, 125, 730 A.2d 1086, 1092 (1999). We will assume, without deciding, that the pets qualified as "someone" close to plaintiffs who faced physical peril by virtue of defendants' negligence. After this threshold showing, where plaintiffs did not themselves suffer an actual "physical impact from an external force," the remaining elements of NIED require that: (1) plaintiffs must have been within the "zone of danger" of the acts imperiling their cats; (2) plaintiffs were subjected to "a reasonable fear of immediate personal injury"; and (3) as a result of such imminent danger to their persons, plaintiffs "suffered substantial bodily injury or illness." *Id.* Even if plaintiffs in this case can show that they suffered an emotional injury with physical manifestations as a result of their cats' deaths, they cannot establish either of the first two elements necessary for NIED.

■ ■ ¶ 13. Plaintiffs allege that by being directed to administer the fatal medication, and by being near their cats when they administered the medication, they were within the "zone of danger" of the negligent acts directed at their cats. Vermont caselaw, however, clearly articulates that, to be in the "zone of danger," the plaintiff must be within the zone "of an act *negligently directed at him* by defendant." *Id.* (emphasis added). Further, recovery for NIED is precluded where the claimant does not allege any "reasonable fear for [his or] her own safety." *Vaillancourt v. Med. Ctr. Hosp. of Vt., Inc.*, 139 Vt. 138, 143, 425 A.2d 92, 95 (1980). The facts alleged in this case do not satisfy these standards. Administering the pills to the cats placed plaintiffs in no fear for their own safety, and Vetpharm's manufacture and distribution of the amlodipine, and the veterinarians' prescription and instructions to give the tablets to the cats, were not acts "directed at" plaintiffs, but rather at their pets. Therefore, we also affirm the trial court's decision to dismiss the NIED claim, and do not reach the question of whether the deaths of cats, or any

animals, could be a triggering event for an otherwise proper NIED claim.

*Affirmed.*