*Joseph et al. v. Dartmouth-Hitchcock Clinic et al.*, No. 28-6-16 Gicv (Harris, J., Oct. 21, 2016).
[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT<br>Grand Isle Unit | CIVIL DIVISION<br>Docket No. 28-6-16 Gicv |
| Benjamin Joseph,<br>Estate of Judith Joseph,<br>        Plaintiffs<br><br>v.<br><br>Dartmouth-Hitchcock Clinic,<br>Dartmouth-Hitchcock Medical Cntr,<br>Elijah Stommel,<br>Thomas Ward,<br>        Defendants | DECISION ON MOTIONS |

On August 29, 2016, Defendants Dartmouth-Hitchcock Clinic, Dartmouth-Hitchcock Medical Center, Elijah Stommel,[1] and Thomas Ward ("Defendants") filed a Motion to Dismiss the Complaint filed by Plaintiffs Benjamin Joseph and the Estate of Judith Joseph ("Plaintiffs") on June 2, 2016.  Defendants are represented by Kaveh S. Shahi, Esq.  Plaintiffs are represented by Robert H. Backus, Esq.

This motion requires the Court to address the interplay between the statutory provisions of the Vermont certificate of merit statute, 12 V.S.A. § 1042, and the statute of limitations set for a medical malpractice action, 12 V.S.A. § 521.  For the reasons stated herein, the Court grants Defendants' motion, but will allow Plaintiffs to continue their cause of action for medical malpractice based on the Amended Complaint filed on August 25, 2016.  The Court also grants Defendants' motion as to Plaintiffs' negligent infliction of emotional distress claim.

I:  FACTUAL SUMMARY

The essential facts are not contested.

On June 2, 2016, Plaintiffs filed a Complaint alleging medical malpractice and negligent infliction of emotional distress (NIED) claims against Defendants.  The Complaint alleged negligent treatment of Judith Joseph on or around June 6, 2013, due to an allegedly improperly administered intravenous IVIg treatment that she received at the Dartmouth-Hitchcock Clinic for a chronic inflammatory demyelinating polyneuropathy.  The Complaint sought recovery for Ms. Joseph's pre-death injuries and suffering, and also alleged a negligent infliction of emotional

---

[1] Elijah Stommel is not listed as a defendant in the Amended Complaint filed on August 25, 2016.

distress claim as to Mr. Joseph. The Complaint was filed without an accompanying certificate of merit, as required under 12 V.S.A. § 1042.

On or around June 6 or 7, 2016, the three-year anniversary of the alleged negligent acts and/or their discovery occurred.

On August 25, 2016, nearly eighty days later, Plaintiffs filed a petition for an automatic extension of the statute of limitations under 12 V.S.A. § 1042(d).

On that same date, Plaintiffs also filed an Amended Complaint. The Amended Complaint was similar to the original Complaint, but only individually named one of the doctors who treated Ms. Joseph. The Amended Complaint was filed with a certificate of merit, in accordance with the requirements of 12 V.S.A. § 1042.

On August 29, Defendants moved to dismiss the original Complaint due to its failure to comply with Section 1042. Defendants also asserted that the petition for an extension of the statute of limitations was ineffective, as it was filed after the original limitations period expired, and thus the Amended Complaint must also be dismissed. In addition, Defendants moved to dismiss Plaintiffs' claim for NIED.

## II: LEGAL ANALYSIS

The Court will first address Defendants' claims as to the original Complaint, filed on June 2. Next, the Court will address the status of the Amended Complaint, filed on August 25 along with the petition for an automatic extension. Finally, the Court will consider the motion as to the cause of action for NIED.

### A: Legal Status of the Complaint

The status of the original Complaint filed in this action turns on the Court's interpretation of the Vermont certificate of merit statute, 12 V.S.A. § 1042. "When interpreting a statute or rule, our overriding goal is to effectuate the drafter's intent; in reaching this goal, we first look at the rule's plain language. If the language can resolve a dispute without betraying a larger legislative scheme, we are bound to follow it, and indeed, there is no need to go further." *Deutsche Bank v. Pinette*, 2016 VT 71, ¶ 17, available at 2016 WL 3452566 (internal alterations, quotation marks, and citations omitted). "The Court must interpret a statute consistently with legislative intent. In doing so, we presume that the Legislature intended a rational result." *In re Walker*, 156 Vt. 639, 639 (1991).

During the 2011-12 legislative session, the Vermont legislature adopted the certificate of merit statute, which became effective on February 1, 2013. The statute provides:

### *§ 1042. Certificate of merit*

(a) *No civil action shall be filed to recover damages resulting from personal injury or wrongful death occurring on or after February 1, 2013, in which it is alleged that such injury or death resulted from the negligence of a health care provider, unless the attorney or party filing the action files a certificate of merit simultaneously with*

*the filing of the complaint. In the certificate of merit, the attorney or plaintiff shall certify that he or she has consulted with a health care provider qualified pursuant to the requirements of Rule 702 of the Vermont Rules of Evidence and any other applicable standard, and that, based on the information reasonably available at the time the opinion is rendered, the health care provider has:*

*(1) Described the applicable standard of care;*

*(2) Indicated that based on reasonably available evidence, there is a reasonable likelihood that the plaintiff will be able to show that the defendant failed to meet that standard of care; and*

*(3) Indicated that there is a reasonable likelihood that the plaintiff will be able to show that the defendant's failure to meet the standard of care caused the plaintiff's injury.*

*(b) A plaintiff may satisfy this requirement through multiple consultations that collectively meet the requirements of subsection (a) of this section.*

*(c) A plaintiff must certify to having consulted with a health care provider as set forth in subsection (a) of this section with respect to each defendant identified in the complaint.*

*(d) Upon petition to the clerk of the court where the civil action will be filed, an automatic 90-day extension of the statute of limitations shall be granted to allow the reasonable inquiry required by this section.*

*(e) The failure to file the certificate of merit as required by this section shall be grounds for dismissal of the action without prejudice, except in the rare instances in which a court determines that expert testimony is not required to establish a case for medical malpractice.*

*(f) The requirements set forth in this section shall not apply to claims where the sole allegation against the health care provider is failure to obtain informed consent.*

12 V.S.A. § 1042.

This action involves a claim to recover damages resulting from the negligence of a health care provider for treatment or conduct occurring after February 1, 2013. Thus this action is subject to the certificate of merit requirement found in 12 V.S.A. § 1042(a). Under the clear statutory directive stated above, when a complaint is filed without a certificate of merit, that defect in the filing "*shall* be grounds for dismissal of the action without prejudice," except for actions where expert testimony is not required. 12 V.S.A. § 1042(d).

This is not the type of case which can proceed to judgment without expert testimony. The determination as to whether the alleged administration of the intravenous IVIg in this matter involves conduct in breach of the professional standard of care will require expert opinion testimony. The proper selection, dosage, and administration techniques—including volume,

3

concentration, and timing of delivery—involved in the medical treatment of a patient with chronic inflammatory demyelinating polyneuropathy are not matters that are obvious to lay persons. See *Estate of Fleming v. Nicholson*, 168 Vt. 495, 497–98 (1998) (stating that "[w]here a professional's lack of care is so apparent that only common knowledge and experience are needed to comprehend it," no expert testimony is needed, but that "[g]enerally, negligence by professionals is demonstrated using expert testimony"). Therefore, Plaintiffs were required under the statute to file a certificate of merit with their Complaint.

The original June 2 Complaint in this matter was filed without the requisite certificate of merit. The Court agrees with Defendants that the statutory language stating that the lack of certificate "shall be grounds" for dismissal without prejudice evinces an intent that such a dismissal without prejudice be summarily entered upon the defendant's request. See *Town of Calais v. Cty. Rd. Comm'rs*, 173 Vt. 620, 621 (2002) (noting that when used in a statute, "shall" refers to mandatory action, as compared with "may," which allows for some discretion). The Complaint must be dismissed without prejudice for lack of the requisite certificate of merit, as required by Section 1042(e).

## B: The Status of the Amended Complaint

The Court must now determine the status of Plaintiffs' Amended Complaint. The first issue presented is whether Plaintiffs' amendment via Vermont Rule of Civil Procedure 15 can save the cause of action originally filed without a certificate of merit. Next, the Court must determine whether Rule 15(c)'s relation-back provision applies in light of the Amended Complaint's filing after the expiration of the statute of limitations. Finally, the Court considers the application of the tolling provisions in the certificate of merit statute itself given Plaintiffs' filing of a petition for such an extension with the Amended Complaint.

### 1. Rule 15

"Both the Vermont rules of civil procedure and the common law tradition of this state encourage liberality in allowing amendments to pleadings where there is no prejudice to the other party." *Bevins v. King*, 143 Vt. 252, 254 (1983). "The principal reasons underlying the liberal amendment policy are (1) to provide maximum opportunity for each claim to be decided on its merits rather than on a procedural technicality, (2) to give notice of the nature of the claim or defense, and (3) to enable a party to assert matters that were overlooked or unknown to him at an earlier stage in the proceedings." *Id.* at 255. Rule 15 of the Vermont Rules of Civil Procedure provides that "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served." V.R.C.P. 15(a). It is not disputed that Plaintiffs' Amended Complaint was filed prior to any responsive pleading being filed in this matter.

The question, however, is whether Rule 15's liberal amendment policy applies when a statute clearly requires that a complaint be filed with specific information. 12 V.S.A. § 1042 states plainly that the complaint and the certificate of merit must be filed "simultaneously." *Id.* § 1042(a). This choice of words is significant, in that the filing requirement alone embodies the entire purpose of the statute. Section 1042 was enacted as a way to "screen out meritless malpractice claims at the outset by requiring consultation with a qualified expert at the beginning

of a lawsuit." *Patient A v. Vt. Agency of Human Servs.*, No. 5:14–cv–000206, slip op. at *7, available at 2015 WL 6449301 (D.Vt. Oct. 23, 2015) (citing the State of Vt. Agency of Admin. Health Care Reform, Medical Malpractice Reforms Report and Proposal Pursuant to Act No. 48 of 2011, § 2(a)(7) 12 (2012)). As Judge Crawford observed, "[i]n passing the statute, the Legislature expressed its strong preference for consultation and retention of experts *before* suit." *Id.* (emphasis added). If medical malpractice complaints could be routinely filed without the required certificate, and later in the proceeding be summarily amended via Rule 15 to correct the missing suit prerequisite, the desired purpose of the Section 1042 pre-suit expert consultation would be thwarted.

Other states which have enacted similar certificate of merit statutes have allowed for more liberal filing requirements. For example, Pennsylvania's statute allows for the complaint to be filed without the certificate of merit so long as one is filed within sixty days of the complaint's filing. See Pa. R. Civ. P. 1042.3(a). The Vermont legislature chose instead to require the simultaneous filing of the complaint and certificate. This clear and unambiguous language evinces an intent contrary to the general principles allowing liberal amendment of pleadings. *Swett v. Haig's, Inc.*, 164 Vt. 1, 5 (1995) ("Words of doubtful meaning do not change common law rules; the intent to do so must be expressed in clear and unambiguous language.").

The legislature has chosen to mandate dismissal without prejudice for complaints filed without a certificate of merit. Due to the legislature's choice, directing dismissal of the action, this Court should not re-write the statute to allow for amendment of the complaint in an action that was filed without the certificate of merit. See *Lecours v. Nationwide Mut. Ins. Co.,* 163 Vt. 157, 161 (1995) (stating that courts are constrained by and may not re-write statutes). This Court holds that amendment via Rule 15 cannot be used to save a complaint filed without a certificate of merit in an action alleging medical malpractice. As a result, the Amended Complaint amends nothing and must be considered as a Complaint in its own right.

## 2. Rule 15(c)

This holding raises an additional issue in that the Amended Complaint was filed on August 25, after the three-year statute of limitations period for medical malpractice actions expired. Although Defendants have not raised a statute of limitations defense, V.R.C.P. 8(c), and the defense is waived if not raised in the answer, *Lillicrap v. Martin*, 156 Vt. 165, 170 (1989), the parties have both raised and do not dispute the limitations issue presented with the filing of the Amended Complaint. (See Defs. Mot. to Dis. at 3; Pls. Resp. at 1). The Court thus will consider the issue of the effect of the statute of limitations on the Amended Complaint. See *DaimlerChrysler Servs. N. Am., LLC v. Ouimette*, 2003 VT 47, ¶ 5, 175 Vt. 316 ("[The Vermont Supreme Court has] recognized that Rule 8(c) is subject to exceptions allowing the court to act *sua sponte* if necessary to do substantial justice and if there is no prejudice to the parties.").

Rule 15(c) provides that an amendment of a pleading relates back to the date of the original filing. V.R.C.P. 15(c). However, the Court has dismissed the original filing, and has determined that Rule 15's amendment provisions cannot be used to save it from such dismissal. The Amended Complaint is thus not an amendment *per se* under Rule 15, and cannot take advantage of Rule 15(c) to relate back to the Complaint's filing date of June 2 for the purposes of avoiding being time-barred by the applicable statute of limitations. Thus the Court must

5

consider whether the statute of limitations was effectively tolled by Plaintiffs' filing of its petition on August 25 in accordance with 12 V.S.A. § 1042(d).

3. Section 1042(d)

Section 1042 contains its own provision regarding the tolling of the statute of limitations to allow for the filing of a certificate of merit: "Upon petition to the clerk of the court where the civil action will be filed, an automatic 90-day extension of the statute of limitations shall be granted to allow the reasonable inquiry required by this section." 12 V.S.A. § 1042(d). Here, Plaintiffs' Section 1042(d) extension petition was filed after the original limitations period had run, but within the ninety-day period that applies when an effective extension petition is filed. The issue presented is whether a petition so filed is sufficient to toll the statute of limitations.

Section 1042(d) on is face is silent as to whether an automatic extension request may or must be filed. Additionally, the statute does not state that such a request must be filed before the original three-year limitations period expires in order for the petition to be effective.

Vermont's certificate of merit statute is similar, though not identical, to those enacted in other states. For example, Pennsylvania's statute expressly requires that the motion to extend the filing deadline be filed with the period sought to be extended. See Pa. R. Civ. P. 1042.3(d). However, it also allows for unlimited extensions of the filing deadline by order of the court for good cause. Note, Pa. R. Civ. P. 1042.3(d) ("In ruling upon a motion to extend time, the court shall give appropriate consideration to the practicalities of securing expert review.").

The New York statute requires that a certificate be filed with the complaint, even if that certificate merely states the attorney's inability to obtain the required expert consultation, in which case the statute grants automatically an additional ninety days to file the correct certificate. N.Y. C.P.L.R. § 3012-a(a)(2). The statute was contemplated as potentially offering a "hefty extension" of the statute of limitations when combined with the rules of procedure regarding service. Practice Commentary, N.Y. C.P.L.R. § 3012-a ("Under [certain scenarios], a plaintiff could obtain a six-month extension to file the certificate, but it is not recommended that plaintiff play it so close to the wire.").

These provisions reflect an interest in balancing the generally liberal rules regarding pleading requirements with the desire to weed out frivolous medical malpractice lawsuits, while also recognizing that certificate of merit statutes in effect mandate potentially significant pretrial discovery and expert consultation. Indeed, for this reason, the Washington Supreme Court ruled its certificate of merit statute to be unconstitutional for unduly burdening the right of access to the courts. *Putman v. Wenatchee Valley Med. Ctr., P.S.*, 216 P.3d 374, 377 (2009) ("Requiring medical malpractice plaintiffs to submit a certificate prior to discovery hinders their right of access to courts."); contra *Herbert v. Hopkins*, 395 S.W.3d 884, 901 (2013) (rejecting a challenge to the Texas certificate of merit statute, including the argument that it denies plaintiffs' right of access to the courts). As concerned the tolling of statutes of limitations, the Washington statute at issue in that case provided: "If the action is commenced within forty-five days prior to the expiration of the applicable statute of limitations, the plaintiff must file the certificate of merit no later than forty-five days after commencing the action." *Putman*, 216 P.3d at 378.

In summary, though the statutes enacted in states across the nation contain different provisions, there appears to be a consensus that plaintiffs should be granted some leniency with respect to filing deadlines and the statutes of limitations given the requirement that plaintiffs include the certificate of merit with their pleadings.

This approach is not revolutionary. The Vermont legislature has at other times enacted statues that modify how statutes of limitations operate. For instance, if a party by whom an action is brought dies, the applicable limitations period is modified and runs two years after the grant of letters testamentary or of administration. 12 V.S.A. § 557. The legislature has allowed for one year extensions of limitations periods in cases filed but dismissed for insufficiency of process caused by unavoidable accident or default or neglect of the officer serving the process. 12 V.S.A. § 558(a)(1).

It is also useful to compare the language of Section 1042 with that of other provisions concerning enlargements of time in litigation. For example, compare the language of 12 V.S.A. § 1042(d) with that of Vermont Rule of Civil Procedure 6(b), which governs enlargements of the timing provisions of the rules of procedure. Rule 6(b) allows a court to enlarge the time required to complete an act in its discretion "for good cause shown" when the request is made within the period sought to be enlarged, or, if requested after the expiration of the period, where the failure to act is due to excusable neglect. V.R.C.P. 6(b). In contrast, section 1042(b)'s extension is "automatic" upon petition to the clerk and "shall be granted," indicating, as noted above, that the extension is mandatory. See *Town of Calais*, 173 Vt. at 621 (noting that when used in a statute, "shall" refers to mandatory action, as compared with "may," which allows for some discretion).

Defendants place significant emphasis on the choice of the word "extension" in the statute. They argue that because the statute uses the term "extension," not "reinstatement," the statue reflects a legislative directive that the extension petition must be filed before the original limitations period runs in order for the automatic extension to be allowed. The Court does not agree.

The term "extension" is not one with a fixed meaning, nor is it a term of art with respect to statutes of limitations. The Vermont Rules of Civil Procedure use the term "enlarge" when the deadline to do an act is extended to a later term. Under the civil rules, requests from parties to extend the deadline to complete an act, such as the filing of a complaint or service of the same, are filed as motions to enlarge time for such actions. See V.R.C.P. 6; *Bessette v. Dept. of Corrections*, 2007 VT 42, ¶¶ 6–7, 182 Vt. 1. The term "extension" in its normal meaning means to enlarge, continue, or prolong a time period.[2] The Court does not discern from this choice in terminology a requirement that a request for an automatic extension of a limitations period necessarily be filed before the time period runs.

---

[2] A sample of definitions of "extension" include: "an increase in length of time" (Definition of "Extension," ¶ 5 (Oct. 5, 2016), http://www.Merriam-Webster.com/dictionary/extension); "an amount by which something is increased, or something added to something else" (Definition of "Extension," ¶ 3 (Oct. 5, 2016), http://dictionary.cambridge.org/us/dictionary/english/extension); and "an additional period of time given to someone to hold office or fulfill an obligation" (Definition of "Extension," ¶ 1.5 (Oct. 5, 2016), https://en.oxforddictionaries.com/definition/extension).

In adopting the provision at issue in this case, the Vermont legislature clearly intended to give plaintiffs additional time, before a limitations period ran, to obtain the mandatory certificate of merit now needed to pursue a malpractice action. The use of the word "automatic" evinces the non-discretionary nature of the tolling provision—all plaintiffs who request it get it. The effect of this automatic extension provision is to allow plaintiffs up to thirty-nine months to bring their claims where additional time is needed to obtain the required pre-suit certificate of merit. Such an automatic extension is warranted given the relatively onerous burden the certificate of merit statute places on plaintiffs at the pleading stage. The Section 1042(d) automatic extension petition provision counteracts the otherwise harsh effect of the certificate of merit prerequisite, which adds another requirement before suit is commenced within the otherwise applicable three-year limitations period.

The Court finds that Section 1042 was not intended to operate as an automatic bar to causes of action filed improperly near the close of the limitations period. To read the statute otherwise would be to convert what is meant to be a dismissal without prejudice into one with prejudice due to the running of the statute of limitations. Where plaintiff files a petition for an automatic extension of the statute of limitations within the ninety-day automatic extension period set out in Section 1042(d), the statute of limitations will be deemed to have been extended for that time, and the opportunity to file a subsequent suit if the expert review warrants the bais for a claim.

Defendants argue that construing Section 1042(d) to allow a ninety-day extension petition to be filed at any time renders medical malpractice limitations statutes meaningless. This line of reasoning does not withstand scrutiny. The statute at most adds three months to the limitations period, extending it from thirty-six to thirty-nine months. Any petition to obtain an automatic extension filed after thirty-nine months from the actionable conduct would not be effective.

The approach described by the Court serves the purposes of Section 1042(d), does not violate its statutory language, and provides for the readily determinable running of a limitations period. Extension requests filed before the running of the thirty-nine month extended time period will be effective to extend the three-year limitations period to thirty-nine months, but a new complaint must be also filed before the thirty nine month period expires.

The Court finds the August 25, 2016 Section 1042(d) automatic extension petition to have been timely filed and thus effective in extending the statute of limitations in this action.

Additionally, the Court finds that the filing of the Amended Complaint on the same day was a good faith effort by Plaintiffs to make a timely and proper filing during the extended limitations period. The Court will not penalize Plaintiffs for making what would have been a timely and proper filing but for the caption and docket number used on the pleading. Such filing was made when the Court's interpretation of the certificate of merit statute was unknown and subject to competing interpretations.

The Court has considered and reviewed the interpretation of the statute found in *McClellan v. Haddock*, No. 482-5-15, slip op. at 4 (Vt. Super. Ct. Nov. 30, 2015) (Toor, J.), which is attached to this Order. In that case a defective complaint, lacking a certificate of merit

8

was filed shortly before the three year limitation period ran, and when a motion to dismiss was filed, the plaintiff moved to file an amended complaint two weeks shy of thirty nine months from the underlying incident.  Similar to the court in this matter, Judge Toor found that the original complaint was subject to dismissal, and that the amended complaint did not "relate back" to the original complaint.  Judge Toor then considered the impact of  the 90-day section 1042(d) automatic extensions statute. In *McClellan* no such petition was filed.  Judge Toor that the existence of the 90 day automatic extension petition right did not mean that the filing of a certificate of merit during the 90 day period was the equivalent of invoking the 90 day extension period through a petition. She reasoned that the language of 1042(d), namely statute's use of the phrase that the civil action  "will be filed" in section (d) meant the complaint  with the certificate of merit could not be filed <u>before</u> the 90 day extension request.

Here, unlike *McClellen* an automatic extension request was filed and the statutory extension period specifically invoked. Further the simultaneous filing of the amended complaint (which the court is treating as a proper new complaint)  means that the extension filing did not come after (but was simultaneous with) the operative civil action  that was filed with the necessary certificate of merit.

Unlike *McClellan* the 90 day period was not being referenced to merely supplement a prior defective complaint.  Judge Toor in *McClellan,* considered the legislative history of § 1042 and its emphasis on avoiding the filing of frivolous lawsuits, stating that "[t]o allow complaints to be filed without such certificates, and then a 90-day period to supplement them, would undercut that goal because frivolous complaints could still be filed even if the plaintiffs were then unable to find any expert support for their theories. . . In the interim 90 day period, a defendant would be put to the burden of hiring a lawyer, filing an answer, having a publicly available court case pending against him or her, and undergoing the stress of being subjected to a lawsuit" *Id.* at 6.

The section 1042(d) automatic extension request interpretation of this court does not trigger such consequences.  By allowing for the filing of the automatic extension during the thirty six to thirty nine month period, the court is merely allowing the filing of the legislatively-envisioned extension of the time to review the basis for the claim. Such automatic limitations period extension petition filings in themselves, present no claim and do not trigger the expense and emotional toil of responding to a filed suit that is ultimately not supported, as Judge Toor feared.  Many potential claims, further examined under the automatic extension period, will be found to lack expert support, and not be filed at all.   Under the approach adopted here, when the expert consultation provides sufficient support for a potentially meritorious claim, the resulting suit will only be filed after the prerequisite certificate of merit is obtained.  Defendants would prefer a both a bright line thirty six month limitations period  and the freedom from responding to good faith suits ultimately found to lack merit.  For plaintiffs, the certificate of merit process does indeed pose a significantly higher burden and delays before filing medical malpractice claims. Plaintiffs must go well beyond the more limited process to pre-screen cases that V.R.C.P. 11 requires (claims warranted by existing law or a nonfrivolous argument to extensions, modifications or reversal of existing law; factual contentions  that are at least likely to have evidentiary support after reasonable opportunity for  investigation or discovery). The Section

1042(d) interpretation here balances these competing interests and is consistent with the legislative language.

Though it is true that "our Supreme Court has made clear that '[w]e require plaintiffs to strictly comply with the rules when expiration of the statute of limitations is an issue," *McClellan*, slip op. at 7 (quoting *Fernecia v. Guiduli*, 2003 VT 50, ¶ 13, 175 Vt. 541), that requirement must give way when the rules themselves are unclear. In *Fernecia*, the Supreme Court considered the plaintiff's failure to comply with the filing deadlines clearly laid out in the Vermont Rules of Civil Procedure. 2003 VT 50, ¶ 8. Here, Plaintiffs were trying to comprehend a newly-enacted statute containing vague terms which are open to at least two different interpretations, as evinced by this Court's opinion and that of the court in *McClellan*. Taking such a strict view as that expressed in *Fernecia* is unwarranted in this instance and runs contrary to the more general liberal view of pleading that is the foundation of civil litigation in this state. Moreover, statutes of limitations are intended to provide notice of a claim, and Plaintiff's June 2, 2016 original complaint, albeit a defective one, was filed in good faith and provided actual notice of the claims to be asserted in this case.

The Court will allow for the filing of the Amended Complaint as a timely pleading, received by the Court on August 25, 2016. The pleading is to be filed under a new docket number and Plaintiffs will need to file a new filing fee for this new and separate action being commenced. The Court will enlarge the time allotted to complete service of this pleading in the new action under V.R.C.P. 6(b)(1). Plaintiffs shall have sixty days from the date of this order to serve copies of this complaint (with its new docket number) and summonses upon Defendants.

### C: The Negligent Infliction of Emotional Distress Claim

Defendants' additionally move to dismiss the second count of the pleading alleging a cause of action for NIED under Vermont Rule of Civil Procedure 12(b)(6). "In determining whether a complaint can survive a motion to dismiss under Rule 12(b)(6), courts must take the factual allegations in the complaint as true, and consider whether 'it appears beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief.'" *Colby v. Umbrella, Inc.*, 2008 VT 20, ¶ 5, 184 Vt. 1 (quoting *Alger v. Dep't of Labor & Indus.*, 2006 VT 115, ¶ 12, 181 Vt. 309 (quotations omitted)).

The first element of a prima facie case for NIED is that plaintiff or someone close to him faced physical peril. *Goodby v. Vetpharm, Inc.*, 2009 VT 52, ¶ 12, 186 Vt. 63. The allegations in the Amended Complaint are sufficient to allege this first element. Mr. Joseph, however, must also allege facts sufficient to support the additional elements of a claim for NIED, as he did not himself suffer an actual "'physical impact from an external force.'" *Id.* Specifically, he must allege that:

1. he was within the "zone of danger" of the acts imperiling Ms. Joseph;
2. he was subjected to "a reasonable fear of immediate personal injury"; and
3. as a result of such imminent danger to his person, Mr. Joseph "suffered substantial bodily injury or illness."

*Id.* "Vermont caselaw…clearly articulates that, to be in the 'zone of danger,' the plaintiff must be within the zone 'of an act negligently directed at him by defendant.'…Further, recovery for NIED is precluded where the claimant does not allege any 'reasonable fear for [his or] her own safety.'" *Id.* (internal citations omitted). Plaintiff has not pled facts sufficient to support either of the first two elements listed above, which are required to state a prima facie case for NIED.

Plaintiff also failed to plead a claim under the more expansive definition of emotional distress outlined in *Vincent v. DeVries*, 2013 VT 34, ¶ 25, 193 Vt. 574. In dicta, the Supreme Court posited upholding a plaintiff's recovery for emotional distress damages in certain cases involving ordinary negligence absent physical manifestations under special circumstances. *Id.* ¶¶ 12-25. However, the analysis around this expansion depends first upon there existing some special relationship between the parties; indeed, the facts of that case concerned a client suing his attorney. *Id.* ¶¶ 18, 21-25 ("'These relationships frequently involve an abuse of power or a position of actual or apparent authority.'" (quoting the Restatement (Third) of Torts: Liability for Physical & Emotional Harm § 47 Reporter's Notes, cmt. d (Tentative Draft No. 5, 2007)).

In essence, *Vincent* potentially expands the kinds of circumstances from which a claim for emotional damages may arise, but still requires that defendant owe plaintiff a duty of care, as demonstrated in the Court's emphasis on the quality of the relationship between plaintiff and defendant. Plaintiff does not allege any such relationship between himself and Defendants. He was the spouse of the individual who had such a relationship.[3] Thus, his case is much more analogous to that of plaintiffs in *Goodby*, and must plead facts sufficient to allege the elements listed above, which he has not.

Although the Court acknowledges that "[m]otions to dismiss for failure to state a claim are disfavored and are rarely granted," Plaintiffs' claim here presents that rare case. *Colby*, 2008 VT 20, ¶ 5. The NIED claim in the pleadings fails to state a claim on which relief can be granted. V.R.C.P. 12(b)(6). That claim is dismissed. *Neal v. Brockway*, 136 Vt. 119, 122 (1978) ("The trial court's proper course of action when granting a Rule 12(b) motion to dismiss prior to the service of a responsive pleading is to dismiss with leave to amend.").

Plaintiffs may amend their NIED count, if they choose to pursue t, before the 8/25/16 pleading is served on Defendants.

---

[3] The Court is aware that some jurisdictions have expanded the duty of care beyond the bounds of the immediate doctor-patient relationship. See, e.g., *Tenuto v. Lederle Labs.*, 90 N.Y.2d 606 (1997) (expanding a doctor's professional duty of care to include parents of infant given vaccine for communicable disease); *Miller v. Rivard*, 585 N.Y.S.2d 523, 526 (N.Y. App. Div. 1992) (recognizing "an independent right of recovery for Mrs. Miller's own injuries from wrongful conception due to an unsuccessful vasectomy performed on her husband"). However, this enlargement of the duty is severely constricted. See *McNulty v. City of New York*, 100 N.Y.2d 227, 233 (2003) (discussing *Tenuto* and noting that "[i]n the limited circumstances where we have expanded the duty, the third party's injury resulted from the physician's performance of the duty of care owed to the patient.").

Whether a duty of care exists "is primarily a question of law." *Endres v. Endres*, 2008 VT 124, ¶ 11, 185 Vt. 63. The Court finds no Vermont precedent adopting an expansive definition of the doctor-patient relationship, nor do Plaintiffs allege a direct relationship between Mr. Joseph and Defendants, or that Defendants had any obligation to Mr. Joseph of a nature that necessarily implicated his emotional well-being. (Compl. ¶¶ 20-21, 33); see *Vincent*, 2013 VT 34, ¶ 18. The Court does not find a basis for extending the duty of care in this case beyond the Defendants' relationship with Ms. Joseph.

11

## III: ORDER

Based on the forgoing, the motion to dismiss the June 2, 2016 Complaint without prejudice is GRANTED. The Amended Complaint will now be deemed the Complaint in this action, with an effective filing date of August 25, 2016, and must be assigned a new docket number upon payment of the filing fee. The new Complaint must be served within sixty (60) days of the date of this order.

The motion to dismiss the negligent infliction of emotional distress claim for failure to state a claim on which relief could be granted under Vermont Rule of Civil Procedure 12(b)(6) is GRANTED. The cause of action for negligent infliction of emotional distress is dismissed.

So ordered in North Hero, Vermont on this ___ day of October, 2016.

_____
Hon. Michael J. Harris
Presiding Superior Court Judge
Grand Isle Unit, Civil Division

12