*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

**ENTRY ORDER**

SUPREME COURT DOCKET NO. 2012-243

DECEMBER TERM, 2012

| | |
|---|---|
| Ashley Smith | } APPEALED FROM: |
| | } |
| | } Superior Court, Franklin Unit, |
| v. | } Family Division |
| | } |
| | } |
| Stephen Rawson | } DOCKET NO. 63-2-12 Frdm |

Trial Judge: Linda Levitt

In the above-entitled cause, the Clerk will enter:

Father appeals from the trial court's order regarding parental rights and responsibilities and parent-child contact in this parentage action. He raises numerous arguments. We affirm.

Mother and father are the parents of son A.R., born in November 2011. Mother initiated this parentage action in February 2012 after she moved out of father's home. In an affidavit accompanying her complaint, mother explained that she hoped to travel out of town with the child. She stated that "[t]here are reasons for my hesitation in leaving" A.R. with father, and she indicated that the court could call her if it needed further information. Father moved to depose mother, and he also sought a psychological evaluation of mother. The court denied both requests. Following a June 2012 hearing, the court awarded mother sole legal and physical rights and responsibilities and established a schedule of parent-child contact for father.

The court found in relevant part as follows. Mother was the child's primary caregiver. She had been primarily responsible for feeding and bathing the child and putting him to bed. She had also chosen the child's daycare provider and his doctor, attended all doctor appointments, and followed up on the doctor's recommendations. Mother lived with her parents, and A.R. was well-adjusted to his living situation. The court found that mother was financially and emotionally able to meet A.R.'s needs.

In reaching its decision, the court observed that both parties were immature, noting that there appeared to be "no reason too trivial" to provoke a fight. The court also expressed concern about father's medications. Father testified that he had been taking methadone for back pain for four years. The court considered this an extraordinarily long time to take such medicine, and suggested that the use of narcotic pain medicine posed a risk to A.R. The court also indicated that father should take a parenting class as his behavior suggested that he was not well-educated on child rearing. It cited, as an example, that father had brought solid baby food to feed his son shortly after his birth.

With these considerations in mind, the court ordered a graduated visitation schedule as follows. Father would have two hours of supervised parent-child contact twice a week between June and September 2012. For the following three months, father would have unsupervised

parent-child contact for three hours twice a week. Following that, father would have one overnight visit and one six-hour daytime visit per week. Additionally, the court specified that parent-child contact could occur by agreement at any other time. At the close of the hearing, father's attorney asked the court if it would review the parties' situation automatically and the court declined to do so. This appeal followed.

We begin with father's assertion that the court erred in denying his request to depose mother. Vermont Rule for Family Proceedings 4(g)(2)(A) provides that in parentage actions such as this one, discovery may be taken as in civil actions, except that "[d]epositions, physical examinations and mental examinations shall be taken only by order for good cause shown." Father argued below that he should have been allowed to depose mother "to ascertain any specific reasons or allegations to support her position [that] supervised parent-child contact [was] reasonable under the circumstances." Father asserted that this would allow him to present appropriate evidence and prevent any element of undue surprise at the hearing. Mother opposed the motion, explaining that father had been informed at a May 2012 case manager conference why mother believed that supervised contact was appropriate. Mother asserted that father had been insensitive to the dangers that his home posed to the child and that he had otherwise disregarded the child's safety. The court denied father's motion, finding no unusual or exceptional circumstances that would warrant a deposition.

Father argues on appeal that the court should have found good cause and ordered a deposition. He essentially reiterates the arguments he made below.[1] Father also suggests that the court applied the wrong standard in evaluating his request.

We have frequently recognized that "[d]iscovery rulings are within the sound discretion of the trial court and will not be disturbed on appeal absent a clear abuse or withholding of that discretion." Lamare v. North Country Animal League, 170 Vt. 115, 124, 743 A.2d 598, 604 (1999). The Vermont Rules for Family Proceedings deliberately limit the availability of depositions like that sought by father, reflecting the view that "[d]epositions, physical examinations and mental examinations generally should be avoided; they carry with them significant potential for abuse, intimidation, and exacerbation of family disputes, counterbalanced by little real need in most cases." Reporter's Notes, V.R.F.P. 4(g).

In this case, father requested the deposition "to ascertain any specific reasons or allegations to support her position for supervised parent child contact." In her response, mother indicated that she had moved out of father's house when the child was about four months old "because [father] appeared to be insensitive to the safety and environment of dangers he presented to the child." She represented that father had disregarded the safety of the parties' child on several occasions and had refused to make the household a suitable place for such a young child. On the basis of this record, we cannot conclude that the trial court abused its discretion in declining father's request. On this record the trial court could reasonably have concluded that father had failed to show good cause sufficient to overcome the policy disfavoring such depositions that is reflected in the rules. As it turned out, mother testified about the specific instances supporting her position that supervised visitation was appropriate, and

---

[1] To the extent that father advances new arguments to support his good cause claim, we do not address them because they were not raised below. See Bull v. Pinkham Eng'g Assocs., 170 Vt. 450, 459 (2000) ("Contentions not raised or fairly presented to the trial court are not preserved for appeal."). Even if we were to consider these arguments, however, they do not demonstrate that the court abused its discretion in denying father's request.

2

father had ample opportunity to and did counter her arguments. There is no showing of "undue surprise" at the hearing.

Nor do we agree with appellant's argument that the trial court applied the wrong legal standard in considering his motion for discovery. Father's motion essentially explained that he wanted to know in advance what mother was going to say about his parenting; virtually any party anticipating a contested hearing on parental rights and responsibilities or parent-child contact would want to know the same. But Family Rule 4(g)(2)(A) does not authorize depositions about such matters as a matter of course but, rather, requires a finding of good cause. We understand the note in the trial court's entry order not as an articulation of an "exceptional circumstances" standard, but as a reflection of the trial court's conclusion that father had failed to describe the kind of need that would meaningfully distinguish his goals in this case from any other case—in short, father failed to show good cause.

The court similarly did not abuse its discretion in denying father's request for a psychological evaluation of mother. See V.R.F.P. 4(g)(2)(A) (mental evaluation only available by order for good cause shown); V.R.F.P. 5(a) (stating that "court may order a physical or mental evaluation of a party"). As noted above, the Family Rules deliberately limit such intrusive kinds of discovery "[i]n order to avoid harassment and unnecessary emotional turmoil in family matters." Reporter's Notes—1991 Amendment, V.R.F.P. 4(g).

Father argued below that mother's behavior raised questions about her ability to adequately provide for A.R.'s needs. He indicated, among other things, that mother was taking drugs for depression and that she had stopped taking the drugs without consulting a doctor. He asserted that she would have erratic highs and lows as a result. He also stated that mother had physically assaulted him and had taken away his medications. The trial court did not abuse its discretion in concluding that these allegations alone did not warrant the intrusion of a psychological evaluation. The trial court could have granted father's motion and deferred ruling if the trial court had concluded, on the basis of the parties' testimony at the hearing and the court's observations of the parties, that an evaluation would be helpful enough to justify the intrusion.

Father next argues that the court erred by not calling a status conference before the final hearing as required by V.R.F.P. 4(c)(5). He claims that this was an error of law, particularly because mother's pleadings raised an unsupported issue of parental fitness. We reject this argument. First, father fails to show that he raised this argument below. See Bull, 170 Vt. at 459. Moreover, he fails to identify any prejudice that resulted from the court's failure to hold a status conference. Rule 4(c)(5) indicates that a status conference is to be "held when the action is ripe for final hearing." At the status conference, the judge determines if the matter is contested or uncontested. If the matter is contested, the judge: schedules a hearing date or further status conference; inquires whether certain issues, including parental unfitness[2] will be raised at the hearing; determines whether expert witnesses will be called to testify; and issues discovery orders and any other appropriate orders. These issues appear to have been covered in a May 2012 case manager conference. The docket entries indicate that the parties were present at this conference, the issue of visitation was identified as contested, and the matter was set for a hearing. Father suggests that he might have retained an expert if the status conference was held and if he had been made aware of mother's concerns about his parenting skills. It is not clear

---

[2] "An unfit parent is defined, for purposes of this rule, as a parent who is demonstrably incapable of providing an appropriate home for his or her child." V.R.F.P. 4(c)(5). The term does not necessarily encompass all concerns a party raises about the other parent's parenting.

3

why an expert would be needed to respond to mother's testimony that, among other things, father left the baby unattended on the bathroom counter; he left the infant in the car while he ran into a store; he vastly overfed the child on several occasions; and he brought solid baby food to the hospital.

Father next challenges the court's parent-child contact schedule. He argues that he was not given sufficient time to develop a nurturing relationship with his son; that the court should not have limited his time with the child in light of the court's own asserted findings that mother sought to alienate the child from him; that the court erroneously made "a medical finding" that the methadone father was taking posed a risk to A.R. without expert evidence; that the court found that father's "physical disability" was a risk to the child and improperly limited parent-child contact on that basis; that the court failed to impartially review the evidence and was biased against him; and that the court should have built in an automatic review of the parent-child contact order.

As we have often repeated, the trial court has broad discretion in determining a child's best interests. See Myott v. Myott, 149 Vt. 573, 578 (1988). "The pattern of visitation adopted . . . will not be reversed unless its discretion was exercised upon unfounded considerations or to an extent clearly unreasonable upon the facts presented." Cleverly v. Cleverly, 151 Vt. 351, 355-56 (1989) (quotation omitted).

Father fails to show an abuse of discretion here. The court recognized the importance of father having contact with A.R., concluded that A.R.'s best interests would be served by ensuring that father had frequent, albeit shorter, visits each week rather than having longer visits every two weeks. We cannot say that the trial court's schedule that graduated up to a weekly overnight and second weekly day of time with father was based on unfounded considerations or clearly unreasonable on the facts presented. The fact that father wants more contact does not mean that the trial court erred in reaching its decision.

As to father's argument that mother was "alienating" the child, the trial court did acknowledge that mother's "arms [had] not been open" to having father involved in the child's life, and admonished mother that father does have a right to be in the child's life. This was but one factor in a host of considerations identified by the trial court in its on-the-record findings. The presence of this factor, alongside the court's countervailing concerns about father's parenting skills, does not render the court's contact schedule an abuse of discretion.

We conclude that the trial court did not make an inappropriate medical finding; nor did it conclude that father's "physical disability" posed a risk to A.R. Rather, it reasonably concluded that father's ongoing use of narcotic pain medicine would have some effect on his alertness, which posed a risk to A.R. No expert testimony was needed to reach this conclusion. In any event, the court did not base its visitation schedule on this finding. Instead, the court's concern was father's apparent lack of child-rearing knowledge.

There is no support for father's claim of bias or his assertion that the court failed to impartially review the evidence. Father points to various findings by the court—such as the court's statement that father did not appear to have done much reading about how to bring up a baby—and essentially argues that the court's finding reflected bias. Weighing the evidence and assessing the credibility of witnesses are matters reserved exclusively for the trial court, and we will not reweigh the evidence on appeal. See Kanaan v. Kanaan, 163 Vt. 402, 405 (1995) (trial court's findings entitled to "wide deference on review" because "it is in a unique position to assess the credibility of the witnesses and the weight of evidence presented"). Nor do we agree

that the adverse findings show that the trial court was biased. The record shows that the court considered the statutory best-interest factors and acted well within its discretion in setting the visitation schedule.

Father takes several specific statements by the court out of context in arguing that the court was biased. In particular, a couple of times the trial court urged counsel to focus on evidence in support of the parties' core claims, rather than extraneous matters. To that end, the trial court urged mother's counsel to focus on evidence supporting the claims in mother's pleadings: "Post birth, who cared for the child . . . what did he do wrong, what did she do right?" This and a related statement were not intended to suggest that the court was looking only for evidence of mother's virtues and father's vices; it was directed at mother's counsel for the purpose of urging counsel to stick to the case pled by mother.

Finally, we reject father's assertion that the court erred by declining to include a provision for automatic judicial review of the parenting orders in its final order. A final order is typically that—a final order. Vermont's statutes set forth a standard for modifying final orders relating to parental rights and responsibilities and parent-child contact. 15 V.S.A. § 660. Father's speculation that he might not be able to show a real, substantial and unanticipated change of circumstances if his parenting skills improve and warrant an increase in parent-child contact, because such improvement would not be unanticipated, is premature and insufficient to justify a departure from the finality that typically accompanies orders concerning parental rights and responsibilities and parent-child contact. Similarly, and assuming arguendo that this argument was raised below, the court was not obligated to include a schedule for this seven-month old child that reflected school vacations, holidays, and summer vacations.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Beth Robinson, Associate Justice